OPINION
{¶ 1} Defendant-appellant, Fidel Vasquez, appeals from the April 28, 2003 judgment of the Franklin County Court of Common Pleas, finding appellant guilty of reckless homicide with specification and tampering with evidence. For the reasons that follow, we affirm.
 {¶ 2} On June 17, 2002, appellant was indicted for one count of murder with a firearm specification and one count of tampering with evidence. Prior to trial, the murder count was amended to reckless homicide with a firearm specification. The charges stemmed from a June 7, 2002 distress call received by Officer Tarey Harris that a female victim was outside of Chuck's Carryout. Officer Harris responded to the area, but saw no one. Later, the officer was flagged down by appellant who directed her to a nearby wall. There, the officer found an unresponsive female victim with a wound to the sternum. Sarah Fulford died from a gunshot wound to the torso with penetration of her heart.
 {¶ 3} Appellant initially denied knowing the victim, but later admitted to Detective Redman that the woman was in an apartment with him when he accidentally shot her. Appellant admitted that after the shooting he put the gun in a trash can and took the trash can to a dumpster. The police recovered a revolver from the dumpster. A spent shell casing found in appellant's shirt pocket was matched to the recovered weapon. Appellant took a polygraph examination that was played to the jury and contained the following questions and answers:
[Q] Did you plan to kill Sarah Fulford?:
[A] No.
[Q] Did you intentionally kill Sarah Fulford?:
[A] No.
[Q] Did you plan to shoot Sarah Fulford?:
[A] No.
[Q] Did you intentionally shoot Sarah Fulford?:
[A] No.
(Tr. Vol. 1 at 138-139.)
 {¶ 4} The polygraph examiner concluded that appellant's answers were not deceptive.
 {¶ 5} The matter was tried to a jury on March 5, 2003. During jury selection, prospective juror Emmet Windon stated that he knew Columbus Police Officer Tarey Harris. Windon, himself a law enforcement officer, and Harris were partners on the force. Harris presently partners with Windon's brother and lives with Windon's ex-roommate. Windon stated that he and Harris are still friends, but that he would "look at just the facts." (Tr. at 38-39.) He also stated that his own job as a police officer would not affect his view of appellant. (Tr. at 39-40.)
 {¶ 6} Prospective juror Carolyn Furr stated that she knew Detective Redman. They were volunteer firefighters together for four or five years. She stated that this fact would not affect her ability to be fair and impartial. (Tr. Vol. I at 15-16.).
 {¶ 7} At trial, the state argued that appellant's conduct was reckless and that he was therefore guilty of reckless homicide. The defense argued that appellant was negligent and therefore only guilty of the offense of negligent homicide. The jury returned a verdict of guilty as to both reckless homicide and tampering with evidence.
 {¶ 8} The trial court sentenced appellant to five years imprisonment on the reckless homicide count with an additional three year firearm specification, three years on the tampering with evidence count to be served consecutively with the sentence for reckless homicide, and court costs of $1,173.
 {¶ 9} Appellant has assigned the following as error:
[I.] Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.
[II.] The trial court erred in imposing the maximum allowable sentence.
[III.] The trial court committed reversible error by imposing a sentence of imprisonment for the commission of a third-degree felony.
[IV.] The trial court erred in imposing consecutive sentences.
[V.] The trial court erred by imposing a financial sanction upon the indigent defendant.
 {¶ 10} In his first assignment of error, appellant contends that he received ineffective assistance of counsel because his trial counsel failed to challenge two prospective jurors who had close personal and professional relationships with police officers who testified for the state.
 {¶ 11} In order to prevail on his claim of ineffective assistance of counsel under Strickland v. Washington (1984),466 U.S. 668, 686, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v.Reynolds (1998), 80 Ohio St.3d 670, 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Strickland at 686.) Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith
(1997), 79 Ohio St.3d 514, 534. Second, appellant must show that but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id.
 {¶ 12} The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985),17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558
("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel");State v. Carpenter (1996), 116 Ohio App.3d 615, 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance").
 {¶ 13} One touchstone of a fair trial is an impartial trier of fact — "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips (1982),455 U.S. 209, 217, 102 S.Ct. 940, 946. Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. McDonough PowerEquipment, Inc. v. Greenwood (1984), 464 U.S. 548, 554,104 S.Ct. 845, 849.
 {¶ 14} "Because the bias of a juror will rarely be admitted by the juror himself, `partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it,' it necessarily must be inferred from surrounding facts and circumstances." Id. at 558. (Brennan concurring; citations omitted.)
 {¶ 15} In Hunley v. Godinez (C.A. 7, 1992), 975 F.2d 316,319, the court reviewed cases in which courts have refused to find, or have found, implied bias:
The Supreme Court has declined to find implied bias in the following cases: Rushen v. Spain, 464 U.S. 114, 104 S.Ct. 453,78 L.Ed.2d 267 (1983) (state post-trial hearing sufficient to determine effect of juror's ex parte communication with judge on juror's deliberations); Smith, 455 U.S. at 215, 102 S.Ct. at 945
(juror's submission during trial of an application for employment as a felony investigator in the District Attorney's office did not require finding of implied bias); Remmer v. United States,347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (attempted bribe of juror for favorable verdict did not require finding of implied bias); Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519,94 L.Ed. 734 (1950) (juror's employment with federal government did not warrant a finding of implied bias). See also Britz v. Thieret, 940 F.2d 226, 231 (7th Cir. 1991) (automatic exclusion of prospective juror who has been exposed to defendant's prior criminal record through pretrial publicity is not constitutionally mandated).
 {¶ 16} Also in Tinsley v. Borg (C.A. 9, 1990), 895 F.2d 520, the court of appeals held that circumstances of rape case in which psychiatric social worker, who had counseled rape victims for a one and one-half year period, and served on jury did not warrant presumption of bias.
On the other hand, courts have been inclined to presume bias in "extreme" situations where the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations. Thus, courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial. See Burton,948 F.2d at 1159 (a juror, sitting in a murder trial where the defendant's defense was battered wife syndrome, was presumed to be biased because juror herself was involved in an abusive family situation at the time of the trial); United States v. Eubanks,591 F.2d 513, 517 (9th Cir. 1979) (court presumed that juror whose sons were currently imprisoned for heroin-related crimes could not remain impartial during heroin conspiracy trial); United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977) (court presumed bias of jurors who worked in one of the banks that defendant was charged with robbing); Jackson v. United States, 395 F.2d 615,617-18 (D.C. Cir. 1968) (court considered juror presumptively biased because he had been a participant in a "love-triangle" analogous to the one at issue in trial); United States ex rel. De Vita v. McCorkle, 248 F.2d 1, 8 (3d Cir. 1957) (en banc) (court imputed bias to juror in a robbery case because juror was victim of a robbery prior to trial).
Hunley, at 319.
 {¶ 17} In Hunley, the rooms of deliberating jurors were burglarized by means of a burglar using a key to enter two hotel rooms in which four jurors were sequestered. The court considered this to be an extreme situation giving rise to a presumption of bias in a murder and burglary case in which the defendant allegedly used a key to enter an apartment and steal small items. The jury was eight to four in favor of conviction before the hotel burglary. After the burglary, four holdout jurors, two of whom were victims, quickly changed votes, and all twelve jurors were notified of the burglary and expressed concern before final deliberations resumed. The court concluded that "[u]se of the `implied bias' doctrine is certainly the rare exception." Id. at 318. Or, as the Fourth Circuit has put it, is this one of "those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances"? Person v. Miller,
(C.A. 4, 1988), 854 F.2d 656, 664, certiorari denied Miller v.Person (1989), 489 U.S. 1011, 109 S.Ct. 1119.
 {¶ 18} Here, although nothing in the record demonstrates any overt prejudice or bias on the part of the prospective jurors, appellant contends that, under the doctrine of implied bias, it was ineffective assistance of counsel for defense counsel not to dismiss the prospective jurors from the jury.
 {¶ 19} After our own review of the record, we conclude that the relationship of two prospective jurors to law enforcement officers involved in the case is not the extreme or extraordinary case in which we can assume bias by the presence of a law enforcement officer on the jury, or a relationship with a law enforcement officer. There is no evidence of actual bias, both jurors stated on the record that they could be fair, and it does not appear that this is the type of case in which courts have found any implied bias. Applying the standards delineated above, we conclude that appellant has not shown either that his counsel's performance fell below a standard of objective reasonableness or that the impartiality of the jury was impinged. The first assignment of error is overruled.
 {¶ 20} In his second assignment of error, appellant contends the trial court erred in imposing the maximum sentence for reckless homicide, because the record does not support that appellant committed the worst form of the offense or that he was likely to be a repeat offender.
 {¶ 21} In sentencing defendant to five years imprisonment for reckless homicide, the trial court imposed the maximum prison term allowed for a felony of the third degree. R.C.2929.14(A)(3). Pursuant to R.C. 2929.14(C), a court may impose a maximum prison term only upon offenders who commit the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders, and upon certain repeat violent offenders. The trial court must also give its reasons when imposing a maximum prison term. R.C.2929.19(B)(2)(d) and (e). The trial court in its judgment entry made the findings necessary to impose a maximum sentence; that defendant had committed the worst form of the offense and that he posed the greatest likelihood of committing future crime.
 {¶ 22} Appellant argues that the very nature of the offense, reckless homicide, always results in serious physical harm, and thus it could not be the worst form of the offense. Apparently, the trial court thought the case might have been murder rather than reckless homicide because on the felony sentencing worksheet the trial court noted, "more likely a murder than reckless." Appellant had a prior conviction for mishandling a firearm in a motor vehicle. But in this case, appellant's reckless handling of a firearm led to the death of another person. Appellant indicated to Detective Redman that he was in close proximity to other people. They were sitting around drinking and smoking marijuana when appellant took out a loaded gun, flipped it, and it went off. The trial court's concern over the level of appellant's recklessness apparently raised the question in the trial court's mind as to whether the shooting went beyond recklessness and was intentional. The trial court found that Sarah Fulford's death was completely senseless. This finding supports the conclusion that appellant committed the worst form of the offense. In addition, appellant's prior conviction and substance abuse problems support the trial court's determination that he posed the greatest likelihood of being a repeat offender. The second assignment of error is not well-taken and is overruled.
 {¶ 23} In his third assignment of error, appellant challenges the imposition of a prison term for a third degree felony. Third degree felonies do not carry a presumption in favor of either prison time or community control sanctions. R.C. 2929.13(C). For the same reasons the trial court imposed a maximum sentence on one count and consecutive sentences, the record supports the determination that a prison sentence was warranted. The trial court is not required by the statute to put a specific finding on the record. Rather, the statute instructs the court to comply with the principles and purposes of sentencing under R.C. 2929.11
and 2929.12. Here, a prison term is commensurate with the seriousness of the offender's conduct and the impact on his victim. See R.C. 2929.11(B). Moreover, the trial court indicated in its sentencing entry that it had considered the principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. The third assignment of error is not well-taken and is overruled.
 {¶ 24} In his fourth assignment of error, appellant contends the trial court erred in imposing consecutive sentences for the reckless homicide count and the tampering with evidence count. R.C. 2929.14(E)(4) permits consecutive prison terms under the following circumstances:
If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 25} The trial court must give reasons for imposing consecutive sentences. R.C. 2929.19(B)(2)(c).
 {¶ 26} Here, the record shows that the trial court conducted the requisite analysis and made the necessary findings to justify consecutive sentences. The trial court stated:
Obviously, this court did give consecutive sentences with respect to tampering with evidence. Mr. Vasquez not only did he lie to the police at first, he's trying to cover up his act with respect to the weapon. Crime totally unrelated to the homicide should be treated separately. Under these circumstances, consecutive sentences are not disproportionate with his conduct and the danger he poses to the public. And the harm caused by the multiple offenses is so great, no single prison term would adequately reflect the seriousness of his conduct. And the defendant's history and character — even though it was only one prior offense dealing with weapons, he's had some alcohol-related offenses. It appears that alcohol is probably involved. Regardless, his history and character demonstrate consecutive sentences are necessary to protect the public from future crime.
(Tr. Vol. II, at 9.)
 {¶ 27} The trial court's statement of its reasons for imposing the sentence it did was sufficient to comply with R.C.2929.19. The fourth assignment of error is not well-taken and is overruled.
 {¶ 28} In his fifth assignment of error, appellant argues the trial court erred in imposing court costs, as he was indigent. Although R.C. 2947.23 requires a court to assess court costs to a criminal defendant in its sentence, R.C. 2949.14 prohibits the collection of costs from an indigent defendant. In State v.Clark, Pickaway App. No. 02CA12, 2002-Ohio-6684, the Fourth District Court of Appeals determined that the trial court lacked statutory authority to assess costs on indigent defendant. InState v. White, Guernsey App. No. 02CA23, 2003-Ohio-2289, the Fifth District Court of Appeals held that nothing in R.C. 2947.23
prohibits the court from assessing costs against an indigent defendant as part of his sentence. The prosecution notes that this conflict is currently pending before the Ohio Supreme Court, which certified the following question: "Pursuant to R.C. 2949.14
and R.C. 2947.23, may a trial court assess court costs against an indigent defendant convicted of a felony, as part of the sentence?" State v. White, 100 Ohio St.3d 1406, 2003-Ohio-4948.
 {¶ 29} Until the Ohio Supreme Court definitively rules on this issue, we believe the better view is set forth in State v.Harshman,156 Ohio App.3d 452, 455-456, 2004-Ohio-1202 at ¶ 9, in which the court states:
This court has previously held that nothing in the plain language of R.C. 2947.23 prohibits a trial court from assessing costs to an indigent defendant. State v. Burns (Mar. 15, 1999), Marion App. No. 9-98-21, 1999 WL 180780, 1999 WL 180780. To the contrary, the language of that statute requires a court to render a judgment against a defendant for the costs of prosecution in its sentencing of the defendant and is devoid of any sort of limiting language regarding indigent defendants. R.C.2947.23. The cost bill provision of R.C. 2949.14 does not alter the requirement that a court assess costs to a convicted defendant. As noted by the Fifth District Court of Appeals, "[t]he statute [R.C. 2949.14] is directed at the ability of the clerk of courts to collect the costs from the person convicted." (Emphasis added.) White, supra. Thus, it "provides a collection mechanism only for non-indigent defendants[.]" Id. Therefore, the trial court did not err in assessing the costs of these prosecutions * * *.
(Emphasis sic.)
 {¶ 30} On this basis, the fifth assignment of error is overruled.
 {¶ 31} Based on the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Petree, JJ., concur.