OPINION *Page 2 
{¶ 1} Appellant Matthew Stein appeals from his conviction for felonious assault in the Court of Common Pleas, Richland County. The relevant facts leading to this appeal are as follows.
 {¶ 2} On October 27, 2003, Aiden Stein was born to Arica Heimlich and Appellant Matthew Stein. Aiden was born with his umbilical cord around his neck, but he suffered no trauma as a result. For the first four and one-half months of his life, Aiden was generally a normally developing baby boy. On March 14, 2004, Arica, his mother, woke Aiden up and fed him at approximately 6:30 AM. When she left for work at 7:43 AM, leaving Aiden in appellant's care, the baby appeared fine. However, at about 10:30 AM that day, appellant banged on the door of his neighbor, Gerald Holland, stating that Aiden had stopped breathing.
 {¶ 3} Holland immediately took the baby from appellant's arms and checked him for signs of choking. Finding nothing, Holland began performing CPR and directed his girlfriend to call 911. Paramedics arrived about five minutes later and transported Aiden to Med Central Hospital. The emergency room physician, Dr. Anthony Midkiff, was told by the paramedics and appellant that the baby had gagged while nursing from a bottle. Dr. Midkiff later testified that he did not see the usual symptoms of choking in Aiden during the examination.
 {¶ 4} Aiden was intubated and transported by helicopter to Akron Children's Hospital. Dr. Daryl Steiner thereupon took over treatment of Aiden. A CT scan revealed evidence of extensive bleeding around Aiden's brain, as well as indications of "older" blood in the baby's subdural region. Dr. Steiner further observed indication of *Page 3 
brain swelling and discovered a skull fracture on the left side of Aiden's skull. Dr. Steiner also observed Aiden had severe retinal hemorrhages, not in the nature of hemorrhages caused by birth. His eventual diagnostic conclusion was that Aiden had suffered brain damage caused by physical abuse. Two other examining physicians at Akron Children's, Dr. Vivek Malhotra and Dr. John Pope, concurred in the diagnosis.
 {¶ 5} In the meantime, the Mansfield Police Department and Richland County Children's Services began an investigation concerning Aiden's injuries, which had left him in a permanent vegetative state. On April 7, 2005, the Richland County Grand Jury indicted appellant on one count of felonious assault and one count of child endangering, both felonies of the second degree. The matter proceeded to a jury trial which commenced on August 25, 2005, and lasted until September 7, 2005. The State's theory of the case was premised on Shaken Baby Syndrome. At the conclusion of the trial, the jury found appellant guilty on both counts of the indictment.
 {¶ 6} A sentencing hearing was conducted on September 12, 2005. The trial court thereupon imposed the statutory maximum sentence of eight years in prison for the offense of felonious assault. The court further found the child endangering charge to be an allied offense of similar import; hence, appellant was not sentenced for said offense.
 {¶ 7} On October 13, 2005, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:
 {¶ 8} "I. THE INEFFECTIVENESS OF DEFENSE COUNSEL VIOLATED APPELANT'S (SIC) RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE *Page 4 
UNITED STATES CONSTITUTION AND ARTICLE I, S. 16 OF THE OHIO CONSTITUTION."
 I. {¶ 9} In his sole Assignment of Error, appellant contends he was deprived of his right to the effective assistance of counsel at trial. We disagree.
 {¶ 10} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267. *Page 5 
 Seating of Jurors Schwartz and Smith {¶ 11} Appellant first argues that his trial counsel was ineffective for failing to object to the seating of two jurors, Allen Schwartz and Lindsey Smith, who he alleges had "direct connections" to certain witnesses in the case.[1] Appellant's Brief at 5.
 {¶ 12} "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." State v. Trummer (1996), 114 Ohio App.3d 456, 461,683 N.E.2d 392, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301.
 {¶ 13} Appellant herein chiefly raises the issue of "implied bias," a principle we have previously addressed only in limited fashion. SeeState v. Winegardner (Feb. 1, 1984), Licking App. No. CA-2958. InState v. Vasquez, Franklin App. No. 03AP-460, 2004-Ohio-3880, the court recognized: "Because the bias of a juror will rarely be admitted by the juror himself, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it, it necessarily must be inferred from surrounding facts and circumstances." Id. at ¶ 14, quoting McDonough Power Equipment, Inc. v.Greenwood (1984), 464 U.S. 548, 558, 104 S.Ct. 845, 849, 78 L.Ed.2d 663, Brennan, J., concurring (internal quotations and additional citations omitted).
 {¶ 14} "[C]ourts have been inclined to presume bias in `extreme' situations where the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations." Vasquez, supra, at ¶ *Page 6 
14 Nonetheless, a juror "* * * ought not to suffer a challenge for cause when the court is satisfied from an examination of the prospective juror or from other evidence that the prospective juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." State v. Duerr (1982), 8 Ohio App.3d 404,457 N.E.2d 843, paragraph two of the syllabus.
 {¶ 15} The record indicates Juror Allen Schwartz is employed as an administrator at Med Central Hospital, where Aiden was first taken on March 14, 2004. Several testifying physicians from Med Central testified at trial. One of them, Dr. Anthony Midkiff, was a work acquaintance of Schwartz. Upon being questioned by the court during voir dire, Schwartz stated that his acquaintance with Dr. Midkiff would not influence his judgment regarding the physician's testimony. Tr. I at 40. Schwartz also stated he could think of no reason that he would not want someone like himself on the jury, were he to be in appellant's place. Tr. I at 154-156. Schwartz also noted he was aware that appellant had filed a lawsuit against the hospital, but denied it would impact his jury service.[2] Tr. I at 155.
 {¶ 16} The second instance cited by appellant centers on Juror Lindsey Smith. She indicated during voir dire that her children are seen by pediatrician Dr. Brad Olson, another Med Central physician, who had assisted in Aiden's care. Appellant suggests that Smith was dependent on Dr. Olson's expertise to treat her own children, and this would create concern in her mind were she to consider the possibility of Dr. Olson being mistaken in Aiden's treatment. Nonetheless, Smith stated that she would not treat Dr. Olson's testimony in a different manner than the other witnesses, and that she *Page 7 
would be objective in listening to Dr. Olson on the stand. Tr. I at 39-40. Smith indicated that she had seen a picture of Aiden, but that it would not affect her judgment, and she otherwise had not experienced any pre-trial publicity. Tr. I at 85-86.
 {¶ 17} Having reviewed the pertinent voir dire portions of the trial transcript, we are unable to conclude the trial court would have abused its discretion in seating Jurors Schwartz and Smith, such that we find no violation of trial counsel's duty to appellant. Duerr; Bradley, supra. We therefore find no merit in appellant's ineffective assistance claims in regard to trial counsel's performance during voir dire.
 Misconduct of Juror Smith {¶ 18} Appellant next argues that trial counsel was ineffective for failing to object to the court's denial of a hearing on the allegation of juror misconduct by Juror Smith.
 {¶ 19} Toward the end of the trial, the court obtained information that Smith had allegedly had conversations about the case with an individual named Shawn Berendt at her place of employment, Flex-Pak, Inc. When confronted by the trial judge, Smith repeatedly denied knowing anyone by that name. Tr. VIII at 1876. In response to further questioning, Smith stated she had only mentioned appellant's name at work, just one time. Tr. VIII at 1877. She denied making any statements concerning the evidence in the case. Id. Although the court thereafter allowed each side the opportunity to explore the conversation further, neither the prosecutor nor defense counsel chose to do so. About six months after the trial, appellant's counsel moved for a new trial on the alleged misconduct, which the court denied.
 {¶ 20} "Conversations by a third person with a juror during the progress of a trial for the purpose of influencing the verdict may invalidate the verdict, but where there is *Page 8 
nothing in the record to demonstrate that the decision might have been influenced by such conversation, the refusal of the trial court to grant a new trial will not be disturbed." State v. Hipkins (1982),69 Ohio St.2d 80, 83, 430 N.E.2d 943, citing State v. Higgins (1942),70 Ohio App. 383, 41 N.E.2d 1022. Furthermore, as an appellate court reviewing a claim of ineffective assistance, we "must keep in mind that different trial counsel will often defend the same case in different manners."State v. Samatar, 152 Ohio App.3d 311, 787 N.E.2d 691, 2003-Ohio-1639, ¶ 88.
 {¶ 21} Upon review of the record, we are unpersuaded that appellant was prejudiced by his trial counsel's performance, in regard to the issue of Juror Smith's third-party contact, to the degree that the outcome of the trial would be suspect. Strickland, supra.
 {¶ 22} Appellants' sole Assignment of Error is therefore overruled.
 {¶ 23} For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.
 Gwin, P. J., Wise, J. and Farmer, J., concur. *Page 9 
JUDGEMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs to appellant.
[1] Appellant also briefly mentions Juror Birmelin in his brief, but does not develop the argument. See App.R. 16(A)(7).
[2] We note appellant's trial counsel did challenge Schwartz because of his knowledge of the lawsuit; however, the court overruled said challenge. Tr. I at 246-247. *Page 1