[Cite as *State v. Petit*, 2017-Ohio-633.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


STATE OF OHIO,                              :

      Plaintiff-Appellee,                 :

                           :

  - vs -

                           :

BRANDON M. PETIT,                           :

      Defendant-Appellant.                :

CASE NO. CA2016-01-005

O P I N I O N
2/21/2017


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20130058


Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for plaintiff-appellee

Faris & Faris, LLC, Jessica D. Faris, 40 South Third Street, Batavia, Ohio 45103, for defendant-appellant


    **M. POWELL, P.J.**

    **{¶ 1}** Defendant-appellant, Brandon Petit, appeals his conviction in the Madison County Court of Common Pleas for burglary.

    **{¶ 2}** On January 30, 2013, appellant, his brother, Bryce Petit, and Cortney Freeman were heroin users in need of money to buy drugs. As she had done before, Cortney contacted Michael Allen ("the victim") and asked for money. When the victim refused, a plan was hatched to burglarize his home. Appellant, Bryce, and Cortney all participated in the

discussion and planning of the burglary. Ashley Fisher was present during the discussion but did not participate in the planning.

{¶ 3} Subsequently, Cortney called the victim a second time and asked for a ride. The victim, who was coming back to town from his parents' home, drove from London, Ohio to nearby Plain City, Ohio, where he picked up Cortney and brought her back to London. During the ride, the two stopped to get cigarettes and soda, stopped at the house of one of Cortney's friends, and "drove around London, * * * just pretty much passing time until" appellant and Bryce were done with the burglary. The victim estimated the whole ride took approximately one hour. After Cortney received a text message from appellant or Bryce that the burglary was done, she directed the victim to drop her off.[1] The victim dropped off Cortney and headed home where he discovered his home had been burglarized and four of his firearms had been stolen.

{¶ 4} After she was dropped off by the victim, Cortney met with appellant and Bryce. The brothers were waiting for her in separate cars. The firearms and other items stolen from the victim's house were in the vehicle driven by appellant. Cortney and Ashley entered the vehicle driven by Bryce. They all went back to the trailer park where appellant and Bryce lived with their mother. Once there, appellant and Bryce carried the firearms into the house. Inside the home, appellant, Bryce, Cortney, and Ashley talked about the burglary. Everyone, including appellant, acknowledged they had participated in the burglary.

{¶ 5} After they were unable to sell the firearms in London, appellant, Bryce, and Cortney went to Columbus, Ohio where they sold the firearms at a pawn shop. Ashley and her daughter accompanied them but stayed in the car during the transaction. The trio

---

1. The victim testified he picked up two women at the trailer park, Cortney and a woman he had never met before. Cortney testified that she and Ashley both rode with the victim as the burglary was taking place, and that they were dropped off together. Ashley initially testified she was in the victim's car with Cortney but minutes later, stated she was not.

received $200 for the firearms and used the money to buy heroin. Cortney testified that although she was the one who signed the pawn shop receipt, all three participated in the sale of the firearms.

{¶ 6} Appellant was indicted in April 2013 on one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, and four counts of receiving stolen property. All five counts were accompanied by a firearm specification. A jury trial was held on January 30, 2015. At the beginning of trial, the trial court merged the four counts of receiving stolen property into a single count accompanied by a single firearm specification.

{¶ 7} At trial, the victim, Cortney, and Ashley testified on behalf of the state. Appellant testified on his own behalf. Appellant admitted hearing Cortney, Bryce, and Ashley discuss a "lick for [them] to hit," but denied participating in the discussion and planning of the burglary. Appellant further denied participating in the burglary or discussing it afterwards. While he admitted he was in the pawn shop when the stolen firearms were sold, he claimed he drove to the store separately and only to pick up Bryce at Bryce's request.

{¶ 8} On January 30, 2015, the jury found appellant guilty of burglary, receiving stolen property, and the firearm specifications for both charges. The trial court merged both firearm specifications into a single firearm specification. Appellant was sentenced to an aggregate four-year prison term.

{¶ 9} Appellant now appeals, raising three assignments of error. The second and third assignments of error will be addressed together.

{¶ 10} Assignment of Error No. 1:

{¶ 11} APPELLANT'S CONVICTION OF BURGLARY, A FELONY OF THE SECOND DEGREE, WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Appellant argues his conviction for burglary is not supported by sufficient

evidence and is against the manifest weight of the evidence because the state failed to prove two elements of the offense.

{¶ 13} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 14} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *Bradbury* at ¶ 17. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

{¶ 15} Appellant was convicted of burglary in violation of R.C. 2911.12(A)(2), which provides that "[n]o person, by force, stealth, or deception, shall [t]respass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."

{¶ 16} Appellant first argues the state failed to prove the element of "trespass"

because there is no physical evidence or eyewitness testimony that appellant entered or remained in the victim's residence.

{¶ 17} R.C. 2911.21(A)(1) defines criminal trespass as: "No person, without privilege to do so, shall [k]nowingly enter or remain on the land or premises of another[.]" "Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another." *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 27. "'Where no privilege exists, entry constitutes trespass.'" *State v. Russ*, 12th Dist. Clermont No. CA99-07-074, 2000 WL 864989, *3 (June 26, 2000), quoting *State v. Lyons*, 18 Ohio St.3d 204, 206 (1985).

{¶ 18} While appellant is correct no physical evidence or eyewitness testimony placed appellant in the victim's home, circumstantial evidence and direct evidence inherently have the same probative value, and in some instances, certain facts can only be established by circumstantial evidence. *Jenks*, 61 Ohio St.3d at 272; *State v. Mobus*, 12th Dist. Butler No. CA2005-01-004, 2005-Ohio-6164, ¶ 51. Moreover, a conviction based on circumstantial evidence is no less sound than one based on direct evidence. *Mobus* at ¶ 51.

{¶ 19} In the case at bar, Cortney and Ashley testified that appellant (1) was present when the plan to burglarize the victim's home was hatched, (2) participated in the discussion regarding the burglary, (3) admitted after the burglary that he had participated in it, and (4) went to the pawn shop to sell the firearms stolen in the burglary. Cortney further testified that appellant participated in the sale of the firearms at the pawn shop. The victim testified he did not give permission to appellant to go into his house, steal the firearms, and subsequently sell them. This evidence, although circumstantial, was sufficient for a rational trier of fact to find that appellant trespassed in the victim's home while committing a criminal offense. We therefore find that the state proved the "trespass" element of burglary under R.C. 2911.12(A)(2).

{¶ 20} Appellant next argues the state failed to present sufficient evidence that anyone other than an accomplice was "present or likely to be present" at the victim's home during the burglary. The state counters that the victim was likely to be present in his home at the time of the burglary because "he could have decided to go home [before picking up Cortney] without telling her beforehand," and "he was intending to go home which makes it 'likely' that he would be home."

{¶ 21} In determining whether persons are likely to be present under R.C. 2911.12(A)(2), a defendant's knowledge is not material. *State v. Pennington*, 12th Dist. Warren No. CA2006-11-136, 2007-Ohio-6572, ¶ 28. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely. *Id.* Although the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. *Id.* at ¶ 29. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. *Id.*

{¶ 22} The Ohio Supreme Court has held that the "likely to be present" element is satisfied where the structure is a permanent dwelling house which is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred. *State v. Kilby*, 50 Ohio St.2d 21, 23 (1977). On the other hand, courts have found insufficient evidence that the occupants were likely to be present when they were absent for an extended period, such as a vacation, and no one else was regularly checking on the house. *See, e.g.*, *State v. Hibbard,* 12th Dist. Butler Nos. CA2001-12-276 and CA2001-12-286, 2003-Ohio-707; *State v. Cantin*, 132 Ohio App.3d 808 (8th Dist.1999); and *State v. Brightman*, 2d Dist. Montgomery No. 20344, 2005-Ohio-3173.

{¶ 23} The fact that a permanent or temporary habitation has been burglarized does not give rise to the presumption that a person was present or likely to be present.

*Pennington*, 2007-Ohio-6572 at ¶ 30; *State v. Fowler*, 4 Ohio St.3d 16, 18-19 (1983). Likewise, "[t]he fact that a dwelling is used as a residence is not, standing alone, sufficient to show that someone is 'likely to be present' at the time of a burglary." *State v. Jackson*, 188 Ohio App.3d 803, 2010-Ohio-1846, ¶ 9 (4th Dist.). The state must adduce specific evidence that people were present or likely to be present. *Pennington* at ¶ 28.

{¶ 24} The record shows that the victim was not home but rather was driving from his parents' house back into town when Cortney called him and asked him for a ride. The purpose of Cortney's call was to lure the victim away from his home and occupy him to facilitate the burglary. The victim testified that following Cortney's call, he drove from London to nearby Plain City, picked up Cortney, and drove back to London. Thereafter, as appellant and Bryce were burglarizing the victim's home, and as Cortney was communicating with the burglars via text messages, the victim and Cortney drove around town, "pretty much passing time until [the burglary] was done." By the time the victim dropped off Cortney and "proceeded to go home," the burglary was complete and the burglars had left the home.

{¶ 25} Although we view the evidence in a light most favorable to the prosecution, we find that the state failed to present sufficient evidence that the victim was likely to be present at his home when the burglary occurred. The state presented no evidence that the victim was home, would be home, or planned to be home at the time of the burglary. The state presented no evidence that the victim went home or considered going home between the time he received Cortney's call and the time he picked her up. The state presented no evidence that the victim would have returned home while the burglary was taking place. The state presented no evidence that any other person had regular access or a key to the victim's home or that the victim asked others to check on his home. Rather, the only evidence presented at trial was that Cortney lured the victim into helping her, kept him away from his home for approximately one hour, undertook efforts to ensure the victim would not and could

not be home during the burglary, and kept the burglars apprised of the victim's whereabouts via text message. Given the foregoing evidence, there was no "logical expectation that a person could be present" during the burglary.

{¶ 26} The state nonetheless asserts that the victim was likely to be present in his home at the time of the burglary because "he could have decided to go home [before picking up Cortney]," and "he was intending to go home." This assertion fails to satisfy the "likely to be present" element of the offense for the simple fact that it is not supported by evidence that the burglary commenced prior to the time the victim picked up Cortney. The state's assertion does not rise above the level of a mere possibility that someone may have been present. *See State v. Broyles*, 5th Dist. Richland No. 2009 CA 0072, 2010-Ohio-1837. However, "likely to be present" connotes more than a mere possibility. *Pennington*, 2007-Ohio-6572 at ¶ 29. A careful review of the victim's testimony shows that the only evidence presented at trial regarding his intentions was that he planned to pick up Cortney and take her to her destination of choice, he was absent from his home when she called, and he was with her and away from his home at the time the burglary took place.

{¶ 27} "[T]he state solely carries the burden of proof and the defense has no duty to disprove the state's case." *State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, ¶ 24. There is no presumption that an occupant is likely to be present merely because the burglary occurred at a residential dwelling. *Pennington* at ¶ 30. Instead, the state *must* adduce *specific evidence* that the occupant was present or likely to be present. *Id.* at ¶ 28. The state failed to meet its burden when it did not establish the timeline of the pertinent events. Accordingly, the state failed to prove the "likely to be present" element of burglary under R.C. 2911.12(A)(2).

{¶ 28} Although the state failed to present sufficient evidence to sustain a burglary conviction under R.C. 2911.12(A)(2), appellant may be convicted of the lesser included

offense of burglary under R.C. 2911.12(A)(3) as the latter contains all the elements of R.C. 2911.12(A)(2) *except* the presence or likely presence of another. *State v. Cole,* 8th Dist. Cuyahoga Nos. 103187 thru 103190, 2016-Ohio-2936, ¶ 45; *State v. Miller*, 2d Dist. Clark No. 2006 CA 98, 2007-Ohio-2361, ¶ 19.

{¶ 29} We recognize that the jury was not instructed on third-degree burglary pursuant to R.C.2911.12(A)(3) as a lesser included offense of second-degree burglary under R.C. 2911.12(A)(2). However, Ohio appellate courts have routinely ordered entry of a conviction for a lesser included offense in circumstances such as those presented in this case. Some appellate districts have relied upon Crim.R. 33(A)(4), which authorizes modification of the verdict of conviction to a lesser-degree, even in circumstances where a defendant has not moved for a new trial. *See Miller* at ¶ 20; *Richardson*, 2014-Ohio-2055 at ¶ 25; *Broyles*, 2010-Ohio-1837 at ¶ 41-42; and *State v. McCoy*, 10th Dist. Franklin No. 07AP-769, 2008-Ohio-3293, ¶ 28. One appellate district has relied upon App.R. 12(A)(1)(a) which gives an appellate court authority to "review [and] modify" a trial court's judgement. *Cole* at ¶ 46. Yet another appellate district has relied upon App.R. 12(B) which allows an appellate court to reverse a trial court's judgment and either "render the judgment that the trial court should have rendered, or remand the cause to the [trial] court with instructions to render such judgment." *State v. Davis*, 1st Dist. Hamilton No C-040411, 2006-Ohio-4599, ¶ 13. Finally, the Fourth Appellate District has held that a trial court may consider on remand entry of a conviction of a lesser degree of burglary from that charged where the evidence of the "likely to be present" element of the offense was insufficient, without reference to specific authority. *State v. Jackson*, 188 Ohio App.3d 803, 2010-Ohio-1846, ¶ 14, fn. 3 (4th Dist.).

{¶ 30} The foregoing cases do not in any respect condition a court's authority to enter a conviction for the lesser included offense upon the jury having been instructed upon such an offense. In fact, the cases either do not indicate that an instruction on a lesser included

offense was given, or indicate that such an instruction was not given. In the case at bar, even though a jury instruction was not given upon the lesser included offense of third-degree burglary under R.C. 2911.12(A)(3), appellant is not prejudiced by entry of a conviction for that offense. The jury was instructed upon and considered all of the elements of the lesser included offense of third-degree burglary and found that those elements were proved beyond a reasonable doubt. The "likely to be present" element of second-degree burglary, upon which we find the evidence was insufficient, has no effect upon the remaining elements of the offense. No additional fact-finding is necessary to determine whether appellant is guilty of third-degree burglary.[2]

{¶ 31} Although the evidence offered at trial was insufficient to support appellant's conviction for burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, the evidence was sufficient to convict appellant of burglary in violation of R.C. 2911.12(A)(3), a third-degree felony. Our determination that appellant's burglary conviction under R.C. 2911.12(A)(2) is not supported by sufficient evidence moots his further argument that the conviction is against the manifest weight of the evidence, and we need not address that argument. *Fairfield v. Eubanks*, 12th Dist. Butler No. CA2013-11-207, 2014-Ohio-3781, ¶ 17.

{¶ 32} Accordingly, we remand this case with instructions for the trial court to vacate appellant's burglary conviction in violation of R.C. 2911.12(A)(2), enter a judgment of conviction on the lesser included offense of burglary in violation of R.C. 2911.12(A)(3), and resentence appellant on the burglary count.

{¶ 33} Appellant's first assignment of error is sustained as to the sufficiency of the evidence argument and moot as to the manifest weight of the evidence argument.

---

2. We do not adopt the rule that entry of a conviction for a lesser included offense never requires a jury instruction on such an offense. On the contrary, there may be circumstances where conviction of a lesser included offense may require additional fact-findings by a jury. In such instances, a jury instruction on the lesser included offense is necessary.

{¶ 34} Assignment of Error No. 2:

{¶ 35} APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL WHEN APPELLANT'S COUNSEL ALLOWED THE EMPANELMENT OF THREE BIASED JURORS DEPRIVING APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY.

{¶ 36} Assignment of Error No. 3:

{¶ 37} APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN APPELLANT'S TRIAL COUNSEL FAILED TO ADEQUATELY CROSS-EXAMINE THE STATE'S WITNESS, ASHLEY FISHER.

{¶ 38} In both assignments of error, appellant generally argues that his burglary conviction and the accompanying firearm specification must be reversed because he received ineffective assistance of trial counsel.

{¶ 39} To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 40} In his second assignment of error, appellant argues he received ineffective

assistance of counsel during voir dire because trial counsel failed to question and challenge for cause three "biased" jurors who all expressed "reservations based on their own or a family member's involvement with law enforcement."

{¶ 41} Generally speaking, the right to jury trial guarantees to the criminal defendant a fair trial by a panel of impartial jurors. *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942. The questioning of jurors during voir dire must be thorough and meaningful to afford a defendant an impartial jury. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 57. However, the jury selection process is inherently subjective, based upon intangible factors and the experience and intuition of trial counsel. *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 64. No specific questions need to be asked, no particular form is mandated, and questions or topics already covered by the trial judge or opposing counsel need not be repeated. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 61, 66. The decision whether to exercise challenges to prospective jurors falls within the realm of reasonable trial strategy. *State v. Ramirez*, 12th Dist. Clermont No. CA2004-06-046, 2005-Ohio-2662, ¶ 35. We will not second-guess trial strategy decisions such as those made during voir dire because trial counsel, who saw and heard the jurors, is in the best position to determine the extent to which prospective jurors should be questioned and/or challenged. *Adams* at ¶ 61; *Jackson* at ¶ 138; *Ramirez* at ¶ 35.

{¶ 42} In the case at bar, the three jurors at issue are D.M. and two jurors unidentified either by name or number. During voir dire, D.M. informed the prosecutor, "My son was a dispatcher for the Madison [County] Sheriff's [Office]." Consequently, the prosecutor asked her, "Is there anything that's happened with his being a dispatcher that would influence you in your decision-making today? Does he come home and tell you – at family functions, 'Here's what happened today at the Sheriff's Department,' or, you know, 'Hey, I talked to the prosecutor today?'" D.M. replied "no."

{¶ 43} The first unidentified juror informed the prosecutor, "My former brother-in-law was a deputy sheriff and he's a corrections officer now." Upon further questioning by the prosecutor, the juror stated that the former relative was not a former employee of the Madison County Sheriff's Office and that he had talked to the juror about some of his investigations. The juror admitted that the way the relative had discussed his job would negatively influence the juror but could not state how.

{¶ 44} The second unidentified juror informed the prosecutor that he or she was a corrections officer. Asked how this might negatively impact his or her decision-making, the juror replied, "I guess it would be harder for me to believe testimony either the Defendant or, you know, someone on the stand just giving testimony." The juror further stated that the fact two of the state's star witnesses were currently in prison would not have an impact on him or her.

{¶ 45} Trial counsel did not individually question the three jurors at issue. However, after referring to the law enforcement connections of the three jurors, trial counsel asked all the prospective jurors, "And all of you feel that that isn't going to affect – really majorly affect your view of the case – reasonable doubt? We're okay with that?" The transcript of the voir dire indicates there was "no audible response" from the prospective jurors. Trial counsel further told the prospective jurors that "credibility can be affected by a lot of different things. People don't tell the truth for a lot of different reasons, and not all of those reasons are bad."

{¶ 46} We find appellant did not receive ineffective assistance of trial counsel during voir dire. With regard to the two unidentified jurors, appellant failed to prove prejudice as he has not shown the two jurors were actually seated on the jury that tried him. *See Adams*, 2004-Ohio-5845 (a claim of juror misconduct must focus on the jurors who were actually seated). Likewise, appellant failed to establish prejudice regarding D.M. It is well-established that "[w]hen a defendant bases an ineffective-assistance claim on an assertion

that his counsel allowed the impanelment of a biased juror, the defendant '*must* show that the juror was *actually biased* against him.'" (Emphasis sic.) *Mundt*, 2007-Ohio-4836 at ¶ 67, quoting *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir.2001). The fact that D.M.'s son was a dispatcher at the sheriff's office does not automatically evince actual bias on D.M.'s part. *See State v. Vasquez*, 10th Dist. Franklin No. 03AP-460, 2004-Ohio-3880 (concluding that the relationship of two prospective jurors to law enforcement officers involved in the case was not the extreme or extraordinary case in which the court can assume bias by the presence of a law enforcement officer on the jury, or a relationship with a law enforcement officer). The voir dire examination of D.M. does not reveal a bias or prejudice against appellant, and appellant failed to show D.M. was *actually biased* against him.

{¶ 47} Appellant's second assignment of error is accordingly overruled.

{¶ 48} In his third assignment of error, appellant argues he received ineffective assistance of counsel at trial because trial counsel did not cross-examine Ashley, one of the state's witnesses, regarding (1) the drug trafficking conviction for which she was serving a prison sentence at the time of trial, (2) whether the state had promised not to oppose her motion for judicial release in exchange for her testimony against appellant, and (3) the "significant conflicts" between her testimony and that of Cortney.

{¶ 49} The manner trial counsel chooses to cross-examine the state's witnesses is a matter of trial strategy, and in fact, limited or no cross-examination of a witness may be the best strategy. *State v. Wisby*, 12th Dist. Clermont No. CA2012-06-049, 2013-Ohio-1307, ¶ 46; *State v. Otte*, 74 Ohio St.3d 555, 565 (1996) (cross-examining a witness can backfire). Furthermore, as this court has consistently held, debatable trial tactics and strategies do not establish ineffective assistance of counsel. *Burns*, 2014-Ohio-4625 at ¶ 9; *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

{¶ 50} The record indicates that both Ashley and Cortney testified at trial in "prison

garb." Both women admitted they were currently in prison, Cortney for participating in the burglary of the victim's home, Ashley for drug trafficking. There is no evidence in the record that Ashley's drug trafficking conviction was in any way related to the case at bar. Cortney was asked by the state whether it had promised not to oppose her motion for judicial release in exchange for her testimony at trial. Ashley was not similarly asked. However, appellant's brief indicates Ashley filed a motion for judicial release 12 days after appellant's trial. There is no indication in the record that trial counsel knew about Ashley's upcoming motion.

{¶ 51} While there were some discrepancies between the two women's testimony, they were not, as appellant asserts, "significant conflicts." Further, the discrepancies mainly concerned whether Ashley rode in the victim's car with Cortney at the time of the burglary. By contrast, and even though it had been two years to the day between the burglary and the trial, the two women were consistent on the crucial parts of their testimony, namely that appellant participated in the discussion regarding the burglary, admitted after the burglary that he had participated in it, and was present when the stolen firearms were sold at the pawn shop.

{¶ 52} We find that appellant failed to establish he was prejudiced by the manner trial counsel cross-examined Ashley. Had trial counsel asked more or different questions, there is no indication that the answers would have been helpful to appellant's defense, or that further cross-examination would have resulted in a not-guilty verdict. Accordingly, appellant did not receive ineffective assistance of counsel during trial counsel's cross-examination of the state's witness.

{¶ 53} Appellant's third assignment of error is overruled.

{¶ 54} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

S. POWELL and RINGLAND, JJ., concur.