JOURNAL ENTRY AND OPINION *Page 3 *Page 4 
{¶ 1} Defendant David Thompson appeals from his conviction for aggravated arson. For the reasons set forth below, we affirm.
 {¶ 2} On November 18, 2005, defendant was indicted for one count of aggravated arson and one count of burglary in connection with the September 25, 2005 fire at the apartment of his former girlfriend, Brandy Gay. Defendant pled not guilty and filed a motion in limine challenging the qualifications of Cleveland Fire Department Det. Nuridinn Jinna to testify that the fire at issue was the result of arson.
 {¶ 3} On December 4, 2006, the trial court held a hearing on the motion in limine. Det. Jinna testified that he has been with the Fire Department for over twenty-three years, working as a firefighter for over seventeen years and conducting arson investigations for over six years. He has completed state and federal arson investigation courses and regularly attends seminars. He is involved in over 150 arson investigations per year and has previously qualified as an expert in arson investigations, and an expert with regard to the point of origin of a fire. Det. Jinna testified that he is familiar with ignition, origin and burn of fires.
 {¶ 4} In this matter, Det. Jinna eliminated accidental causes of the fire, determined that accelerants were not used, and that the point of origin was a pile of clothing, the top of which had been set on fire.
 {¶ 5} On cross-examination, he admitted that his training courses were brief. *Page 5 
He further acknowledged that the NFPA 921 Guide for Fire and Explosion Investigations indicates that the scientific method should be used and that data should be collected. He admitted that he did not collect evidence or conduct any tests in this matter, but he noted that no accelerants were detected so there was no need to test for their presence. He also conceded that the television, an air conditioner, an iron and the bed had sustained damage in the fire, but he denied that these items were the point of origin, given their relatively limited damage. He also denied that the fire was caused by a cigarette in light of the limited amount of soot and the V-shaped burn pattern near the closet.
 {¶ 6} The trial court then concluded that Det. Jinna's testimony was admissible pursuant to Evid.R. 702.
 {¶ 7} Commencing with the state's case-in-chief, Adonica Nunley testified that she and her boyfriend, Edward Kent, lived in a CMHA row house a few doors away from Brandy Gay. On the night of the fire, Nunley observed defendant sitting in the doorway of Gay's apartment, then taking some of Gay's belongings to the dumpster. After that, the smoke detector went off and Nunley observed defendant leave with boxes. Nunley and Kent then retrieved items from the dumpster and held them for Gay. They then went to the apartment to determine if Gay was inside, but the door was locked.
 {¶ 8} A short time later, Nunley noticed that defendant had returned to Gay's unit and that smoke suddenly stopped coming out of the windows. She heard *Page 6 
someone tamper with the smoke detector, then it stopped going off. She then called the police.
 {¶ 9} Brandy Gay testified that she met defendant in 2002 and began a romantic relationship with him. During this time, defendant purchased numerous items for her and her children. By September 2005, Gay wanted to end the relationship, and she got defendant's key back from him. She testified, however, that defendant handles evictions for CMHA and that the landlord unlocks units for him in some of the evictions. On the night of the fire, she was on a date with another man. When she returned, she discovered that her things had been burned. Gay immediately called defendant and the next day, he took her to buy clothes for her children. He also helped her move into a new apartment.
 {¶ 10} Edward Kent testified that one or two days before the fire, he observed Gay and defendant having an argument. At this time, Gay ended the relationship and mentioned calling defendant's wife. On the night of the fire, Kent was working out and saw defendant carrying bags to a truck. Kent called Nunley over and they watched as defendant carried more bags out of the apartment and placed them in the dumpster. According to Kent, for the next fifteen minutes, defendant continued to carry things out of Gay's apartment and place them in the dumpster. Kent told Nunley to call the police. He next observed defendant go back into the apartment with a shirt on his head. A short time later, smoke came out of the apartment and the fire alarm went off. Kent again called the police and observed defendant exit the *Page 7 
back door of the apartment and proceed to East 110th
Street.
 {¶ 11} The fire department responded to the scene. After Gay returned home, Nunley told her that her belongings were in the dumpster and Gay said that Nunley could keep whatever she wanted.
 {¶ 12} Loretta Vaughn testified that she lives on East 110th Street near Gay and that all of the houses in this area are side-by-side row houses, which are part of Woodhill Homes. Vaughn stated that defendant is employed by the contractor responsible for evictions, and he visited Gay three or four times per week. At approximately 3:00 a.m. on the night of the fire, Vaughn awoke to use the restroom, then smelled smoke. She looked out and saw defendant standing outside and looking up at Gay's house. He then went to the back of the building and went upstairs.
 {¶ 13} Det. Jinna testified that he has been an arson investigator for the Cleveland Fire Department and also served as a firefighter for seventeen years. He investigated over 150 fires and has qualified as an expert in other cases.
 {¶ 14} Det. Jinna next testified that he responded to the fire at Gay's apartment and determined that it was not caused by an electrical problem or by one of the appliances in the home. He also detected a burn pattern in the shape of a "V" near the closet. This area had extensive damage and Jinna concluded that it was the point of origin. No accelerants were detected, but Jinna concluded that the fire was not accidental. In his opinion, someone lit a pile of clothing in the closet with an *Page 8 
open flame, causing the top of the pile to burn.
 {¶ 15} Det. Jinna next testified that the bed was not the point of origin because it sustained radiating rather than intense damage. Similarly, the air conditioner was not the point of origin because it would have burned from the inside outward if the fire had started there. The iron and television were also eliminated as the source of the fire. There was not enough soot at the scene to indicate that the fire had smouldered, as from a cigarette or other item.
 {¶ 16} On cross-examination, Det. Jinna admitted that he did not collect the clothing, but he stated that no testing was needed since no accelerants were detected. He also indicated that he did not use the NFPA Guide in conducting his investigation, but he stated that this document is simply a tool or a guide and that he primarily relies upon his training and experience.
 {¶ 17} Defendant again moved to disqualify Det. Jinna, complaining that he did not follow the NFPA Guide, was not qualified, and used unreliable procedures which rendered his conclusions improper. Defendant also moved for a judgment of acquittal. The trial court denied the motions and the matter was submitted to the jury.
 {¶ 18} The jury found defendant guilty of aggravated arson and not guilty of burglary. Defendant filed a motion for a new trial in which he asserted that during its deliberations, the jury improperly considered that defendant would be sentenced to probation if convicted of the arson charge. Alternatively, defendant maintained that *Page 9 
there was no evidence to support the requisite element of "knowingly." The trial court denied the motion and defendant was sentenced to two years of community control sanctions and post-release control. He now appeals and assigns seven errors for our review.
 {¶ 19} Defendant's first assignment of error states:
 {¶ 20} "The defendant-appellant was denied Due Process of Law and his right to a fair trial when Detective Nuridinn Jinna was allowed to testify as an expert as to his conclusions regarding the cause and origin of the fire in this case."
 {¶ 21} The trial court has broad discretion in determining the admissibility of expert testimony, and we may reverse only if the trial court abused its discretion. See Kumho Tire Co. v. Carmichael (1999),526 U.S. 137, 152-153, 119 S.Ct. 1167, 143 L.Ed.2d 238. In general, the trial court must perform a "gatekeeping" role to insure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the jury. Daubert v. Merrell Dow Pharmaceuticals,Inc. (1993), 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469. TheDaubert court stated that a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. Id. In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. Id. at 593-594, 113 S.Ct. at 2797,125 L.Ed.2d at 482-483. Although *Page 10 
these factors may aid in determining reliability, the inquiry is flexible. The focus is "solely on principles and methodology, not on the conclusions that they generate." Id.
 {¶ 22} In performing this role, the trial court must also follow Evid.R. 702 which states in pertinent part:
 {¶ 23} "A witness may testify as an expert if all of the following apply:
 {¶ 24} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 25} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 26} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 27} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 28} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 29} "(3) The particular procedure, test, or experiment was conducted in a *Page 11 
way that will yield an accurate result."
 {¶ 30} As to Det. Jinna's qualifications, the record reflects that he has significant experience in fire investigations as he has served as an arson investigator for over six years, has investigated over 150 fires, has also worked as a firefighter for seventeen years and receives regular training.
 {¶ 31} As to whether testimony is based on reliable scientific, technical, or other specialized information, the record demonstrates that the NFPA _921 Guide was a tool that he used but that he primarily relied upon his training and experience. Specifically, the NFPA _921 recognizes the process of elimination and deductive reasoning as an appropriate methodology for determining the cause and origin of a fire. The courts have also found deductive reasoning and the process of elimination to be credible, scientific evidence. Abon, Ltd. v. Transcon.Ins. Co., Richland App. No. 2004-CA-0029, 2005-Ohio-3052. In addition, the NFPA 921 states in relevant part:
 {¶ 32} "The scientific method is applied using the following six steps.
 {¶ 33} "4-3.1 Recognize the Need. First, one should determine that a problem exists. In this case, a fire or explosion has occurred and the cause should be determined and listed so that future, similar incidents can be prevented.
 {¶ 34} "4-3.2 Define the Problem. Having determined that a problem exists, the investigator or analyst should define in what manner the problem can be solved. In this case, a proper origin and cause investigation should be conducted. This is *Page 12 
done by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing.
 {¶ 35} "4-3.3 Collect Data. Facts about the fire incident are now collected. This is done by observation, experiment, or other direct data gathering means. This is called empirical data because it is based on observation or experience and is capable of being verified.
 {¶ 36} "4-3.4 Analyze the Data (Inductive Reasoning). All of the collected and observed information is analyzed by inductive reasoning. This is the process in which the total body of empirical data collected is carefully examined in the light of the investigator's knowledge, training and experience. Subjective or speculative information cannot be included in the analysis, only facts that can be clearly proven by observation or experiment.
 {¶ 37} "4-3.5 Develop a Hypothesis. Based on the data analysis, the investigator should now produce a hypothesis or group of hypotheses to explain the origin and cause of the fire or explosion incident. This hypothesis should be based solely on the empirical data that the investigator has collected.
 {¶ 38} "4-3.6 Test the Hypothesis (Deductive Reasoning). All other reasonable origins and causes should be eliminated. The investigator does not have a truly provable hypothesis unless it can stand the test of careful and serious *Page 13 
challenge. This is done by the process of deductive reasoning, in which the investigator compares his or her hypothesis to all known facts. If the hypothesis cannot withstand an examination by deductive reasoning, it should be discarded as not provable and a new hypothesis tested. This may include the collection of new data or reanalysis of existing data. This process needs to be continued until all feasible hypotheses have been tested. Otherwise the fire cause should be listed as `undetermined.'"
 {¶ 39} In this matter, the record demonstrates that Det. Jinna's opinions were the result of a reliable process that essentially conformed to NFPA _921. He implemented the process of elimination and deductive reasoning. He recognized the need for an investigation, defined the problem by interviewing witnesses and surveying the residence. He also collected data by taking photographs and noting the extent of damage, if any, in the unit and in each appliance and outlet. From his examination, he determined that no accelerants were used, the fire did not result from the wiring or an electrical appliance, and that the fire originated from a pile of clothing in the closet.
 {¶ 40} Accordingly, we find no abuse of discretion in connection with the trial court's admission of Det. Jinna's expert testimony in this matter.
 {¶ 41} This assignment of error is without merit.
 {¶ 42} Defendant's second assignment of error states:
 {¶ 43} "The defendant-appellant was denied Due Process of Law and his right *Page 14 
to a fair trial when the trial court overruled his Rule 29 motion as to Count 1 Aggravated Arson."
 {¶ 44} Crim.R. 29 provides in pertinent part:
 {¶ 45} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 46} Upon review of a ruling on Crim.R. 29(A), this court construes the evidence in a light most favorable to the state. An entry denying the motion is proper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988),51 Ohio App.3d 215, 216, 555 N.E.2d 689, citing State v. Bridgeman
(1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
 {¶ 47} The elements of aggravated arson are set forth in R.C. 2909.02:
 {¶ 48} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 49} "(1) Create a substantial risk of serious physical harm to any person other than the offender;
 {¶ 50} "(2) Cause physical harm to any occupied structure[.]" *Page 15 
 {¶ 51} The state is not required to introduce into evidence the testimony of someone who actually witnesses the defendant set the fire.State v. Hoak (Aug. 9, 1995), Lorain App. No. 94CA005917. Rather, "[t]he element of knowledge required for a finding of aggravated arson can be established by circumstantial evidence." Id.; State v. Pahlau, Stark No. 2006-CA-00010, 2006-Ohio-4051.
 {¶ 52} In this matter, the evidence demonstrated that one or two days before the fire, Gay ended her relationship with defendant. On the night of the fire, she was not home, and neighbors observed defendant at the apartment and saw him take items out of the unit and throw other items away. They did not observe anyone else near the apartment at that time. They then saw defendant put a shirt over his head and go into the apartment and shortly thereafter saw smoke coming from the unit. A smoke detector activated then stopped. Accidental causes for the fire were eliminated, and it was determined from the relative lack of soot that the fire did not smoulder, as from a cigarette or cigar. The point of origin was determined to be a pile of clothing near the closet. From the foregoing, we find that reasonable minds can reach different conclusions as to whether defendant knowingly set the fire which damaged Gay's belongings and her apartment and created a risk to other neighbors. The trial court properly denied the motion for a judgment of acquittal as to this charge.
 {¶ 53} This assignment of error is without merit.
 {¶ 54} Defendant's third assignment of error states: *Page 16 
 {¶ 55} "The defendant-appellant was denied Due Process of Law and his right to a fair trial when he was convicted against the manifest weight of the evidence as to Count 1 Aggravated Arson."
 {¶ 56} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court explained:
 {¶ 57} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 {¶ 58} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised *Page 17 
only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 59} In this matter, we cannot conclude that the jury lost its way in convicting defendant of the offense of aggravated arson. The state's evidence demonstrated that Gay ended her relationship with defendant one or two days before the fire, defendant was observed throwing items from her apartment into the dumpster and placing other items in a truck. He was also seen going into her apartment with a shirt on his head just before the fire started, and was then seen leaving. No others were observed at the unit. There was no evidence that the fire resulted from the wiring of the apartment or from an electrical appliance and it was not accidentally caused. The conviction is not against the manifest weight of the evidence.
 {¶ 60} This assignment of error is without merit.
 {¶ 61} Defendant's fourth assignment of error states:
 {¶ 62} "The defendant-appellant was denied Due Process of Law and his right to a fair trial when the trial court excluded evidence of the NFPA 921 Manual and prior uncontroverted arson testimony from Lt. Alberto Lugo of the Cleveland Fire Department."
 {¶ 63} Within this assignment of error, defendant maintains that the trial court erred in refusing to permit him to introduce testimony from Cleveland Fire Department Lt. Albert Lugo, taken in a different matter, wherein Lt. Lugo testified that "[an accidental fire going [sic] to start, it's going to start in one area. Highly unlikely *Page 18 
that an accidental fire is going to be caused in two different areas.]" From this, defendant contended that the statement was relevant to show "if it's one point of origin it's usually an accidental case." (Tr. 495.)
 {¶ 64} In this matter, there was no compliance with Evid.R.804(B)(1), a hearsay exception allowing prior testimony of an unavailable witness. Defendant insisted that it was admissible under Evid.R. 201, but this rule allows us to take "judicial notice" of docket records, not of evidence contained in the transcripts. Nat'l Distillers Chem. Corp. v.Limbach (1994), 71 Ohio St.3d 214, 643 N.E.2d 101.
 {¶ 65} This assignment of error is without merit.
 {¶ 66} Defendant's fifth assignment of error states:
 {¶ 67} "The defendant-appellant was denied Due Process of Law and his right to a fair trial when the trial court instructed the jury as to `flight' and failed to instruct the jury regarding witness credibility and Detective Jinna's failure to follow the standards set forth in NFPA 921."
 {¶ 68} With regard to the flight instruction, we note that the decision whether to instruct the jury on flight lies within the trial court's discretion. An appellate court will not reverse that decision absent an abuse of discretion. State v. Robinson, Hamilton App. No. C-060434, 2007-Ohio-2388. An instruction on flight, if supported by the evidence, is admissible to show consciousness of guilt. Id. Flight means some escape or affirmative attempt to avoid apprehension. It can take the form of fleeing from the police or eyewitnesses, or changing or disguising one's physical *Page 19 
characteristics after the fact. State v. Wesley, Cuyahoga App. No. 80684, 2002-Ohio-4429.
 {¶ 69} We find no abuse of discretion in this matter as the evidence demonstrated that defendant fled from the scene when others detected his actions and summoned police.
 {¶ 70} As to an instruction regarding Det. Jinna's credibility, we note that defendant requested that the jury be instructed that Det. Jinna's testimony be viewed with "grave suspicion" since, defendant maintains, he did not follow the NFPA Guide in this matter.
 {¶ 71} We note that the "grave suspicion" instruction is applicable where the trial court is dealing with accomplice testimony. See R.C.2923.03(D). It is not applicable herein as the claimed omissions simply go to the weight of this witness's testimony. Woods v. City ofWellston (S.D. Ohio Oct. 17, 2005), Case No. 2:02-CV-762.
 {¶ 72} This assignment of error is without merit.
 {¶ 73} Defendant's sixth assignment of error states:
 {¶ 74} "The defendant-appellant was denied Due Process of Law when his motion for a new trial was overruled without a hearing."
 {¶ 75} Evid.R. 606(B), the aliunde rule, governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict and states:
 {¶ 76} "Upon an inquiry into the validity of a verdict or indictment, a juror may *Page 20 
not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court."
 {¶ 77} The rule requires a foundation from non-juror sources.State v. Hessler, 90 Ohio St.3d 108, 2000-Ohio-30, 734 N.E.2d 1237. "One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first." State v.Schiebel (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54, 61.
 {¶ 78} In this matter, the affidavit of one juror alleging misconduct was insufficient in the absence of other non-juror sources of the alleged impropriety. The motion merely set forth the single affidavit of a juror as internal evidence of the jury's deliberations in order to impeach the guilty verdict as prohibited by Evid.R. 606. Further, the affidavit does not offer evidence of any improper extraneous influence (i.e., threats, bribes, or attempted threats or bribes or improprieties by a court officer) within the exceptions to Evid.R. 606(B). Accordingly, no evidentiary *Page 21 
hearing was required in this instance and the trial court did not abuse its discretion in overruling the motion for a new trial.
 {¶ 79} This assignment of error is without merit.
 {¶ 80} Defendant's seventh assignment of error states:
 {¶ 81} "The defendant-appellant was denied Due Process of Law and his right to a fair trial when the trial court prejudicially limited defense counsel's closing argument."
 {¶ 82} A party has "wide latitude" in stating what the evidence shows, the reasonable inferences that may be drawn from it, and may also comment on those inferences during closing argument. See State v.Smith (1997), 80 Ohio St.3d 89, 111, 1997-Ohio-355, 684 N.E.2d 668. However, a party may not invite "the jury to reach its decision on matters outside the evidence adduced at trial." State v. Hart (1994),94 Ohio App.3d 665, 672, 641 N.E.2d 755.
 {¶ 83} Within this assignment of error, defendant complains that the trial court erred in connection with the following portions of his counsel's closing argument:
 {¶ 84} "MR. MANCINO: * * * One reason you're not going to see that is because the lighting conditions are so poor.
 {¶ 85} "MR. KOLASINSKI: Objection, your Honor.
 {¶ 86} "THE COURT: Yeah. I'll sustain it.
 {¶ 87} "MR. MANCINO: * * * And [Kent] saw the police approach the person *Page 22 
who he said was my client. It wasn't my client.
 {¶ 88} "MR. KOLASINSKI: Objection, your Honor.
 {¶ 89} "THE COURT: Again, I'll sustain. I'll allow you to continue."
 {¶ 90} In this case, there was no evidence presented concerning the lighting conditions and absolutely no evidence that police approached another individual in response to the calls made by Kent. Moreover, no evidence was admitted to fairly create these inferences. Accordingly, defendant's counsel was not permitted to so argue. We therefore reject this assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
 JAMES J. SWEENEY, A.J., and *Page 23 
 FRANK D. CELEBREZZE, JR., J., CONCUR *Page 1