JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Nathaniel Harris (Harris), appeals his conviction and sentence. After reviewing the parties' arguments and pertinent case law, we affirm.
 {¶ 2} On September 14, 2006, a Cuyahoga County Grand Jury indicted Harris with the following eleven counts: two counts of attempted murder, four counts of felonious assault, one count of aggravated burglary, one count of having a weapon while under disability, one count of possession of drugs, one count of failure to comply with an order or signal of police, and one count of tampering with evidence.
 {¶ 3} The counts for attempted murder, felonious assault, and aggravated burglary included one-and three-year firearm specifications. The count for possession of drugs included a one-year firearm specification.
 {¶ 4} The facts giving rise to the instant case began on August 28, 2006, outside of a nightclub called the View, located at 527 Prospect Avenue, Cleveland, Ohio. At approximately 2:30 a.m., about sixty people were standing outside of the View, including Harris and codefendant Marious Sowell (Sowell), when a fight erupted between about twenty to thirty people.
 {¶ 5} During the fight, Chantez Moore (Moore) pinned Harris to the ground. While punching him, Moore heard gunshots and stood up to run away. As he was running, Moore realized that he had been shot. Stephen Hall was shot as well.
 {¶ 6} As the fight ensued, Cleveland Police Officer Thomas Barnes (Barnes), who was acting as a private security guard at the Marriott Residence Inn across the street from the *Page 4 
View, witnessed the fight. Barnes heard the gunshots and watched the crowd run away from the direction of the gunshots, which was also away from Harris and Sowell. Barnes watched Harris and Sowell run towards a silver Range Rover. Harris stuffed an item under the front seat of the car that Barnes believed to be a gun. Harris and Sowell drove away from the scene.
 {¶ 7} Thereafter, Harris drove through a red light and nearly struck a Cleveland police car. Cleveland Police Officer Patrick Petranek (Petranek) was driving the police car and fellow officer Herbert Ross (Ross) was sitting in the passenger seat. The officers signaled to the Range Rover to pull over. Harris, the driver, pulled over and spoke with police, but suddenly took off northbound on East 9th at speeds between fifty and sixty miles per hour. Officers Petranek and Ross pursued the Range Rover.
 {¶ 8} When road construction prevented further travel by car, Harris and Sowell abandoned the Range Rover on Euclid Avenue, near East 4th, and proceeded on foot down the loading dock of the Hyatt Regency. Harris and Sowell looked back towards Ross, who was chasing them on foot, and reached into their waistbands for what Ross believed to be guns.
 {¶ 9} Harris and Sowell proceeded inside the Hyatt Regency until a security guard, Michael Parks (Parks), stopped them and told them they must leave. Harris offered Parks $1000 to help them exit the building. Thereafter, Harris and Sowell were apprehended outside of the hotel by other officers responding to the scene. *Page 5 
 {¶ 10} Later that morning, between approximately 6:30 a.m. and 7:00 a.m., Parks found Monet Williams (Williams) and Charese Dowdell (Dowdell) on the loading dock. Williams was on a cellular phone. Dowdell was taking instructions from Williams and was searching the area. Dowdell opened the door to the Hyatt Regency and made several motions toward a vat of grease. Parks instructed the women that they must leave. The women told Parks they were looking for money that their friend lost the night before. The women were at the Hyatt Regency for thirty to forty-five minutes. Williams' cellular phone records reveal that during this time, she shared a phone call with the Cuyahoga County jail for a total of thirty-nine minutes.
 {¶ 11} Later that day, Cleveland police drained the vat of grease and discovered a .40 caliber Smith and Wesson glock (gun) with six live rounds inside the magazine.
 {¶ 12} On September 27, 2007, the case proceeded to a joint jury trial with Sowell, except for the charge of having a weapon while under disability which was tried to the bench. During the trial, the State dismissed count eleven of the indictment for possession of drugs. Harris also motioned for acquittal pursuant to Crim. R. 29. The trial court granted Harris' motion in part and dismissed the counts for attempted murder and felonious assault.
 {¶ 13} On October 3, 2007, the jury returned the following verdict: guilty of aggravated burglary and of the one-and three-year firearm specifications attached; guilty of failure to comply with an order or signal of police; and lastly, guilty of tampering with evidence. The trial court found Harris guilty of having a weapon while under disability. *Page 6 
 {¶ 14} On November 2, 2007, the trial court sentenced Harris to ten years of imprisonment as follows: three years for the one-and three-year firearm specifications, merged for sentencing and to be served consecutively; six years for aggravated burglary; one year for failure to comply with an order or signal of police, to be served consecutively; five years for having a weapon while under disability, to be served concurrently; and lastly, five years for tampering with evidence, to be served concurrently.
 {¶ 15} Harris appeals, asserting eleven assignments of error for our review.
ASSIGNMENT OF ERROR NUMBER ONE "The trial court erred in denying Appellant's motion for acquittal when the State failed to present sufficient evidence of the charges."
 {¶ 16} Harris argues that the trial court erred when it denied his Crim. R. 29 motion for acquittal as to the remaining charges.
 {¶ 17} Crim. R. 29(A), which governs motions for acquittal, states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 18} Furthermore, in reviewing the sufficiency of the evidence, we have held:
 "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements *Page 7 
of the crime proven beyond a reasonable doubt. The motion `should be granted only where reasonable minds could not fail to find reasonable doubt.'" State v. McDuffie, Cuyahoga App. No. 88662, 2007-Ohio-3421, quoting State v. Apanovitch (1987), 33 Ohio St.3d 19, 23. (Internal citations omitted.)
 {¶ 19} R.C. 2921.331(B) sets forth the offense of failure to comply with an order or signal of police as charged: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Failure to comply has an additional element as charged: "The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii).
 {¶ 20} R.C. 2901.01(A)(6)(b) defines serious physical harm to property and reads as follows:
 "[A]ny physical harm to property that does either of the following: * * * Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time."
 {¶ 21} Barnes, Ross, and Petranek each identified Harris as the driver of the Range Rover. (Tr. 294, 357, 466.) Harris sped off at fifty to sixty miles per hour despite receiving visible and audible orders from officers Ross and Petranek to bring the vehicle to a stop. (Tr. 243-246, 343, 454-458.) Harris' intent to elude or flee the officers is further evidenced by his choice to flee on foot when road construction prevented further travel in the Range Rover. (Tr. 346, 460.)
 {¶ 22} Neither Harris nor Sowell owned the Range Rover. Andre Johnson, Harris' friend, owned the Range Rover and lent it to Harris so that he could run an errand. (Tr. 591, *Page 8 
593-594.) As such, Harris interfered with Johnson's use and enjoyment of his Range Rover when he took it out for the entire evening despite only having permission to run an errand to the store. Therefore, Harris caused a substantial risk of serious physical harm to property, namely, Johnson's Range Rover.
 {¶ 23} The State also charged Harris with aggravated burglary, set forth in R.C. 2911.11(A), as follows:
 "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 24} Force is defined in R.C. 2901.01(A)(1) as follows: "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Furthermore, "[i]t has long been established in Ohio that the force element of an aggravated burglary charge can be accomplished through the opening of a closed but unlocked door." State v. Austin, Montgomery App. No. 20445,2005-Ohio-1035. Harris entered through a closed but unlocked rear door of the Hyatt Regency, thus satisfying the element of force. (Tr. 392.)
 {¶ 25} Criminal trespass is set forth in R.C. 2911.21(A), as follows: "No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another * * *." Harris had no privilege to enter the Hyatt Regency on *Page 9 
August 28, 2006, but remained on the premises, traveling through hallways, thus satisfying the element of trespass. (Tr. 387-388.)
 {¶ 26} Additionally, pursuant to R.C. 2911.11(A): "Another person other than an accomplice of the offender," was present, namely, Parks. (Tr. 388-391.) Harris also entered the Hyatt Regency "with purpose to commit in the structure * * * any criminal offense" because Harris was still in the act of failing to comply with an order of police by running into the Hyatt Regency to flee Ross and Petranek. See R.C. 2911.11(A).
 {¶ 27} Harris also had a deadly weapon, namely a gun, on or about his person or under his control when he entered the Hyatt Regency. This is further evidenced by the fact that Ross saw Harris reach into his pants for what he believed to be a gun. (Tr. 347, 462.) Additionally, Cleveland Police Officer Michael Alexander (Alexander) later retrieved the gun from the vat of grease in the hallway through which Harris ran. (Tr. 702.) The gun matched the shell casings collected outside of the View. (Tr. 683.)
 {¶ 28} Tampering with evidence, set forth in R.C. 2921.12, is as follows:
 "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."
 {¶ 29} Harris knew that an official investigation was in progress when he was detained in the Cuyahoga County jail. At approximately 6:00 a.m., the evidence shows that Harris and Sowell placed concurrent phone calls to Williams and Dowdell. *Page 10 
 {¶ 30} When the phone calls ended, Williams and Dowdell contacted each other by phone and agreed to meet at the Hyatt Regency. (Tr. 403, 659.) At the Hyatt Regency, Williams spent thirty-nine minutes on her cellular phone with a number affiliated with the Cuyahoga County jail. (Tr. 660.) During this time, Dowdell searched the area and finally motioned towards the vat of grease inside the Hyatt Regency where the gun was later recovered. (Tr. 408-409.) This evidence demonstrates that Harris not only concealed the gun when fleeing police earlier that morning, but that Harris and Sowell contacted Williams and Dowdell in order to remove the gun, thus attempting to impair its availability as evidence in the investigation.
 {¶ 31} Harris argues that there lacks sufficient evidence to sustain his convictions for aggravated burglary and tampering with evidence because the trial court failed to include a jury instruction on complicity. In support thereof, Harris cites to State v. Brown (1998), Summit App. No. 18766 and State v. Peterson, Columbiana App. No. 06 CO 50, 2007-Ohio-4979.
 {¶ 32} In Brown and Peterson, the appeals courts found that there lacked sufficient evidence to determine which codefendant acted as the principal offender in a conspiracy. In Brown, the court held: "[T]here was insufficient evidence to find that Brown was a `principal offender' in this case. There was insufficient evidence that the fatal shot was fired from Brown's gun." Brown at 15. In Peterson, the court held: "It is impossible to tell, based on the evidence introduced at trial, whether Peterson, Haddleston, or both actually committed the criminal act forming the basis of his conviction as a principal."Peterson at _32. *Page 11 
 {¶ 33} The instant case is distinguishable, however, because here, there is no issue regarding multiple bullets and which bullet caused the victim's death as in Brown, for example. Here, there is sufficient evidence demonstrating that Harris and Sowell, although together, acted independently of each other despite only one gun being recovered. Thus, the lack of a jury instruction for conspiracy does not give rise to the lack of sufficient evidence for aggravated burglary or tampering with evidence.
 {¶ 34} The offense of having a weapon while under disability is set forth in R.C. 2923.13(A):
 "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * (2) The person is under indictment for or has been convicted of any felony offense of violence. (3) The person is under indictment for or has been convicted of any offense involving the illegal possession * * * in any drug of abuse * * *."
Thus, a conviction for having a weapon while under disability arises out of either a prior conviction for a felony of violence or for a prior conviction for a drug offense.
 {¶ 35} The indictment alleges in part that Harris: "[U]nlawfully and knowingly acquired, had, carried, or used a firearm or dangerous ordnance while being under indictment for or having been convicted of a felony of violence * * *." Thereafter the indictment cites to Harris' three prior drug possession convictions: CR-414176, CR-419517, and CR-422187.
 {¶ 36} On appeal, Harris argues that there lacks sufficient evidence to convict him of having a weapon while under disability as charged because the State failed to prove a prior *Page 12 
conviction for a felony of violence. Harris argues this is so because the indictment cites to Harris' prior drug possession convictions and not to any felonies of violence.
 "However, Crim. R. 12(B)(2) requires that objections to the indictment be brought before trial. * * * Thus, other than plain error, appellant has waived any argument concerning the validity of the indictment." State v. Frazier (1995), 73 Ohio St.3d 323.
 {¶ 37} The United States Supreme Court established two factors for consideration when determining the sufficiency of an indictment:
 "These criteria are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet and, secondly, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Russell v. United States (1962), 369 U.S. 749. (Internal citations omitted.)
 {¶ 38} In the case sub judice, despite the typographical error in Harris' indictment, the indictment still contains the elements of the charged offense and was also sufficient to apprise Harris of the nature of the offense charged. See State v. Carson (1999), Franklin App. No. 98AP-784. Harris had notice that he was charged with having a weapon while under disability as a result of three prior drug possession convictions. Id.
 {¶ 39} Neither is Harris relieved from disability pursuant to any exceptions set forth in R.C. 2923.14. The facts show that on the night in question, Harris knowingly carried a gun. Barnes watched Harris place an object under the front seat of the Range Rover that he believed to be a gun. Ross saw Harris and Sowell reach into their pants for what he believed to be guns before Harris ran inside the Hyatt Regency. (Tr. 347.) Police recovered a gun in *Page 13 
the grease vat that matched the shell casings collected outside of the View. (Tr. 683, 702.) Furthermore, Harris stipulated to his conviction for drug possession in CR-419517.
 {¶ 40} Thus, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could find the essential elements of the crimes proven beyond a reasonable doubt. As such, the trial court did not err when it denied Harris' Crim. R. 29 motion for acquittal regarding the remaining counts.
 {¶ 41} Harris' first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO "The Appellant's convictions are against the manifest weight of the evidence." Harris argues that the verdict is against the manifest weight of the evidence.
 {¶ 42} The Ohio Supreme Court set forth the following standard for evaluating a claim that a verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 43} We have held that, compared to the sufficiency of the evidence:
 "A challenge to the manifest weight of the evidence, * * * attacks the credibility of the evidence presented. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence." State v. Ortiz, Cuyahoga App. No. 89952, 2008-Ohio-4120. *Page 14 
 {¶ 44} In applying the facts set forth in Harris' first assignment of error to the standard for evaluating a manifest weight of the evidence claim, we cannot find that the jury or the trial court clearly lost its way and created a manifest miscarriage of justice.
 {¶ 45} Harris failed to comply with an order or signal of police pursuant to R.C. 2921.331(B) when he sped off at fifty to sixty miles per hour despite visible and audible orders from Ross and Petranek to stop the vehicle. (Tr. 294, 343-346, 357, 454-458, 466.) Harris continued to elude or flee the officers when he exited the Range Rover and ran inside the Hyatt. (Tr. 346, 460.) Harris also caused a substantial risk of serious physical harm to Johnson's Range Rover when he took the vehicle for the entire evening despite only having permission to run an errand to the store.
 {¶ 46} Harris committed aggravated burglary pursuant to R.C. 2911.11(A). Harris used force and trespassed in the Hyatt Regency when he opened a closed but unlocked door to the building and entered. (Tr. 392.) Harris did not have privilege to enter the Hyatt Regency; when he did, he encountered Parks. (Tr. 388-391.) Further, Harris entered the structure with the purpose to commit a criminal offense because he entered in order to flee Ross and Petranek. Harris had a deadly weapon on or about his person or under his control when he entered the Hyatt Regency, namely, the gun. (Tr. 347, 462, 683, 702.)
 {¶ 47} Harris also tampered with evidence when he not only concealed the gun when fleeing police earlier that morning, but also when he and Sowell contacted Williams and Dowdell in order to remove the gun from the vat of grease to impair its availability as evidence in the investigation. (Tr. 403, 729.) Harris also had a weapon while under *Page 15 
disability because, despite a prior conviction for drug possession to which he stipulated, he carried a gun during the early morning hours of August 28, 2006.
 {¶ 48} In reviewing the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of witnesses and in resolving conflicts in the evidence, we cannot find that the jury or the trial court clearly lost their way and created a manifest miscarriage of justice.
 {¶ 49} Harris' second assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER THREE "Appellant was denied a fair trial and due process when the State allowed the destruction of exculpatory evidence which was further exacerbated by prosecutorial misconduct."
 {¶ 50} Harris argues that he was denied a fair trial and due process when the State allowed the destruction of video surveillance from the Hyatt Regency. Harris further asserts that destruction of the video surveillance gave rise to prosecutorial misconduct.
 {¶ 51} The Supreme Court of Ohio set forth the following standard of review regarding prosecutorial misconduct:
 "Prosecutorial violations of Crim. R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefitted the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." State v. Joseph (1995), 73 Ohio St.3d 450.
 {¶ 52} Furthermore, the Due Process Clause of the Fourteenth Amendment of the United States Constitution requires the State to disclose material evidence that is favorable to a criminal defendant. Brady v.Maryland (1963), 373 U.S. 83. *Page 16 
 "The Due Process Clause further protects a criminal defendant from being convicted where the state has failed to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. However, the state has no duty to gather such exculpatory evidence. ** * Rather, when the state has failed to gather exculpatory evidence or to fully investigate the allegations, the defendant may either investigate the charge and collect the evidence himself, if such evidence is available, or he may point out the deficiencies in the state's investigation at trial." State v. Farris, Clark App. No. 2003 CA 77, 2004-Ohio-5980. (Internal citation omitted.)
 {¶ 53} "We note that in Arizona v. Youngblood (1988), 488 U.S. 51 * * * the United States Supreme Court held that unless a criminal defendant can show bad faith on the part of police officials, failure to preserve potentially useful evidence does not constitute a denial of due process of law." State v. Roseborough, Ashland App. No. 04 COA 085,2006-Ohio-2254.
 {¶ 54} Here, there is no evidence that the video is exculpatory, thus we proceed as if the video may have contained potentially useful evidence. Harris argues that the video was useful because he is not shown to have been carrying a gun through the Hyatt.
 {¶ 55} However, the video surveillance contained dead space in which Harris' path through the hallways was not recorded. Additionally, the camera recording the location of the vat of grease was at a great distance, creating a very grainy image. Also, those testifying regarding the video stated that they never saw Harris with a gun in the video, negating the need for the actual video to show the same. (Tr. 416-420.) *Page 17 
 {¶ 56} Further, Harris fails to show any bad faith on the part of police officials pursuant to Youngblood. Nor does Harris show any willful violation of Crim. R. 16 on the part of the State pursuant toJoseph.
 {¶ 57} Furthermore, there is no evidence that Harris suffered any prejudicial effect as a result of the video being destroyed.
 {¶ 58} Thus, we cannot find that Harris was denied a fair trial or due process. Nor can we find any prosecutorial misconduct.
 {¶ 59} Harris' third assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER FOUR "Appellant was denied his right to a fair trial under the United States and Ohio Constitutions when the court failed to replace a juror after it had been learned that he was related to one of the state's witnesses."
 {¶ 60} Harris argues that the trial court erred when it failed to replace a juror after learning that he was related to one of the State's witnesses.
 {¶ 61} "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." State v. Stein, Richland App. No. 05-CA-103,2007-Ohio-1153, citing State v. Trummer (1996), 114 Ohio App.3d 456. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217. Furthermore, "unless a juror is challenged for cause, he or she is presumed to be impartial." State v. Williams (1997),79 Ohio St.3d 1. *Page 18 
 {¶ 62} In the case sub judice, after Andre Johnson (Johnson) testified that he owned the Range Rover and loaned it to Harris that night, a juror came forward and disclosed to the court that Johnson was his first cousin. (Tr. 602.) A review of the record reveals the following colloquy:
 "THE COURT: Is it going to make it uncomfortable for you to remain on this jury if you see Mr. Johnson at family functions in the future, having rendered a verdict in this case?
 JUROR NO. 4: No. No.
 THE COURT: Okay. After seeing Mr. Johnson testify, and the fact that he's your cousin, are you — do you feel that you've developed more of an alliance to one side of this case or another?
 JUROR NO. 4: No. * * *.
 MR. GOLDBERG [COUNSEL FOR SOWELL]: Do you feel that you can still be impartial in considering the evidence in this case?
 JUROR NO. 4: Yes.
 MR. GOLDBERG: Based on your personal background with your — this gentlemen being your cousin, do you feel that you'll be able to consider everything with an open mind?
 JUROR NO. 4: Yes.
 MR. GOLDBERG: Have you discussed your relationship with this witness with any of the other jurors?
 JUROR NO. 4: No."
 {¶ 63} After a review of Juror No. 4's responses, we cannot find that the trial court abused its discretion when it did not replace him with an alternate. *Page 19 
 {¶ 64} Harris' fourth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER FIVE "The trial court erred when it joined the Appellant's trial with that of his co-defendant."
 {¶ 65} Harris argues that the trial court erred when it joined his trial with Sowell's trial.
 {¶ 66} We review a trial court's decision to conduct a joint trial upon an abuse-of-discretion standard. State v. Segines, Cuyahoga App. No. 89915, 2008-Ohio-2041.
"A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden of affirmatively showing that his rights were prejudiced." State v. Torres (1981),66 Ohio St.2d 340.
 {¶ 67} Pertaining to joinder, Crim. R. 8(B) reads as follows:
 "Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."
 {¶ 68} Additionally, R.C. 2945.13 contains the following:
 "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."
 {¶ 69} Crim. R. 14 reads:
 "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment * * *, or by such joinder for trial together of *Page 20 
indictments * * *, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
 {¶ 70} However, in the instant case, Harris never motioned the court for severance. Crim. R. 12(B)(5) requires that motions for severance of defendants to be raised before trial.
 {¶ 71} Thus, Harris waived this argument on appeal save for plain error. Plain error is set forth in Crim. R. 52(B): "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 72} The Supreme Court of Ohio held: "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91. The Supreme Court of Ohio further held: "The plain error test requires that, but for the existence of the error, the result of the trial would have been otherwise."State v. Wiles (1991), 59 Ohio St.3d 71.
 {¶ 73} "Joinder of defendants is the rule rather than the exception * * *." State v. Jordan (1999), Cuyahoga App. No. 73453. We have held that:
 "Joinder of trials will always result, to some extent, in prejudice to a defendant — that assumption is implicit in the rules. But unless that prejudice is compelling enough to show an abuse of discretion, an appellate court will not impose its opinion on the trial court. Moreover, the trial judge will be acutely aware of the difficulties of joinder and, as in this case, is in the best position to cure potential prejudice." State v. Adkins (1988), Cuyahoga App. No. 53960. *Page 21 
 {¶ 74} Specifically, Harris argues that the trial court erred in joining his trial with Sowell's trial because their defenses were antagonistic. Harris argues that he was prohibited from calling Sowell as a witness. Harris also argues that the accumulation of Sowell's wrongdoing prejudiced Harris. We disagree.
 {¶ 75} Harris and Sowell's trial was joined because the evidence against both is the same. Additionally, a joint trial allowed the jury to weigh the evidence "without drawing prejudicial inferences against the defendants" and prevented jury confusion. Adkins at 7-8. In regard to calling Sowell as a witness, the matter is addressed in Harris' sixth assignment of error.
 {¶ 76} Thus, Harris fails to demonstrate that if he had a trial separate from Sowell that the outcome would have been different. Nor can we find sufficient prejudice to warrant a new trial.
 {¶ 77} Harris' fifth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER SIX "Appellant was denied his constitutional right of confrontation in violation of the Sixth amendment of the United States Constitution."
 {¶ 78} Harris argues that he was denied his right to cross-examine Sowell in violation of his Sixth Amendment rights.
 {¶ 79} The Sixth Amendment of the United States Constitution guarantees Harris the right "to be confronted with the witnesses against him * * *." Therefore, admission of a *Page 22 
codefendant's statement with no opportunity to cross-examine violates the Sixth Amendment's Confrontation Clause. Bruton v. United States
(1968), 391 U.S. 123.
 {¶ 80} "Where two or more defendants are tried jointly, therefore, the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives hisFifth Amendment rights so as to permit cross-examination." Cruz v. NewYork (1987), 481 U.S. 186.
 {¶ 81} Here, however, no statement made by Sowell was ever introduced at trial. Thus, it cannot be said that Harris' Sixth Amendment right to confront witnesses against him was violated.
 {¶ 82} Harris' sixth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER SEVEN "The trial court erred by failing to declare a mistrial after the jury heard inadmissible evidence thereby denying the Appellant his right to a fair trial as guaranteed by the United States and Ohio Constitutions."
 {¶ 83} Harris argues that the trial court erred when it failed to declare a mistrial at the conclusion of Officer Charles McIntire's (McIntire) testimony.
 {¶ 84} The standard of review for evaluating a trial judge's decision to grant or deny a mistrial is abuse of discretion. State v.Goerndt, Cuyahoga App. No. 88892, 2007-Ohio-4067.
 "A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected. This determination is made at the discretion of the trial court. The granting of a mistrial is necessary only when a fair trial is no longer possible. Therefore, the essential inquiry is whether the substantial rights of the accused are adversely or materially affected." State v. *Page 23 Ervin, Cuyahoga App. No. 88618, 2007-Ohio-5942. (Internal citation omitted.)
 {¶ 85} However, Harris never motioned for a mistrial, thus we review for plain error. State v. Herbert, Cuyahoga App. No. 89662,2008-Ohio-911.
 {¶ 86} McIntire testified affirmatively that Harris made phone calls from the jail to a cellular phone number belonging to Monet Williams (Williams), one of the two women searching around the Hyatt the next morning.
 {¶ 87} However, McIntire's testimony was baseless. In light thereof, the trial court admonished McIntire and instructed the jury to disregard his testimony in its entirety. (Tr. 648-649.)
 {¶ 88} Thus, we cannot find that Harris' substantial rights were adversely or materially affected. Harris' seventh assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER EIGHT "Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions."
 {¶ 89} Harris argues that he was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.
 {¶ 90} To establish a claim for ineffective assistance of counsel, Harris must satisfy the two-prong test set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668: First, Harris must prove that trial counsel's performance was deficient; namely, that counsel's errors were so serious that counsel was not functioning as *Page 24 
counsel guaranteed by the Sixth Amendment. Second, that the deficient performance prejudiced the defense, depriving defendant of a fair trial.
 {¶ 91} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at paragraph 2(b) of syllabus.
 {¶ 92} Harris argues that his counsel was ineffective for the following reasons: counsel failed to move for relief from joinder, counsel failed to object to the presence of juror number four, and counsel failed to motion for a mistrial.
 {¶ 93} In light of our rulings on Harris' fourth, fifth, and seventh assignments of error, we cannot find that counsel's performance was deficient or that counsel's performance prejudiced Harris, depriving him of a fair trial.
 {¶ 94} Harris' eighth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER NINE "The Appellant was denied due process of law and his right to a fair trial when the trial court prejudicially limited defense counsel's closing argument."
 {¶ 95} Harris argues that he was denied due process and the right to a fair trial when the trial court prevented him from arguing the reasons why he ran from the police.
 "A party has wide latitude in stating what the evidence shows, the reasonable inferences that may be drawn from it, and may also comment on those inferences during closing argument. However, a party may not invite the jury to reach its decision on matters outside the evidence adduced at trial." State v. Thompson, Cuyahoga App. No. 89391, 2008-Ohio-316, at ¶ 82, quoting State v. Hart (1994), 94 Ohio App.3d 665, 672. (Internal citation omitted.) *Page 25 
 {¶ 96} Harris argues that the trial court erred by denying him the opportunity to argue in closing that he ran from police because he was in possession of drugs. However, no evidence was adduced at trial that Harris was in possession of drugs. Nor were there any inferences to that effect.
 {¶ 97} Harris' ninth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TEN "The trial court's sentence was not supported by the record."
 {¶ 98} Harris argues that his constitutional rights were violated when the trial court failed to consider statutory criteria. We disagree.
 {¶ 99} Appellate courts review sentences de novo.[1] State v.Tish, Cuyahoga App. No. 88247, 2007-Ohio-1836. "A defendant's sentence will not be disturbed on appeal unless the reviewing court finds, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law. Clear and convincing evidence is that which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought *Page 26 
to be established." State v. Samuels, Cuyahoga App. No. 88610,2007-Ohio-3904. (Internal citations omitted.)
 {¶ 100} The Supreme Court of Ohio held in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100. Additionally, "judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant." Id. at ¶ 99.
 {¶ 101} Although Foster no longer requires the trial court to make findings or give reasons for imposing its sentence, R.C. 2929.11 and2929.12 remain operative, setting forth the statutory factors that the trial court must consider when imposing its sentence. State v.Page, Cuyahoga App. No. 90485, 2008-Ohio-4424. Specifically, R.C. 2929.11(A) sets forth the overriding purpose of felony sentencing in Ohio and reads, in part:
 "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."
 {¶ 102} Aggravated burglary pursuant to R.C. 2911.11, is a felony of the first degree, subjecting Harris to a minimum three-year and maximum ten-year sentence. Failure to comply with an order or signal of police, as charged under R.C. 2921.331, tampering with *Page 27 
evidence pursuant to R.C. 2921.12, and having a weapon while under disability pursuant to R.C. 2923.13 are third degree felonies, subjecting Harris to a minimum one-year and maximum five-year sentence. As such a review of Harris' sentence reveals that it is within the statutory range.
 {¶ 103} Further, the trial court considered R.C. 2929.11, 2929.12 and2929.13. The sentencing journal entry dated November 2, 2007, reads, in part: "The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11."
 {¶ 104} The sentencing transcript reveals that the trial court considered the following: Harris' prior criminal record, the presentence investigation report, Harris' apology, Harris' nonviolent past, and all other required factors. See R.C. 2929.12 and 2929.13.
 {¶ 105} Therefore, we find that Harris' sentence is supported by clear and convincing evidence.
 {¶ 106} Harris' tenth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER ELEVEN "The trial court erred when it imposed a five year sentence upon appellant for violating his post release control."
 {¶ 107} Harris argues that the trial court erred when it imposed a five-year sentence for violation of postrelease control in CR-414176.
 {¶ 108} On November 2, 2007, the following is journalized in CR-414176: *Page 28 
 "The court finds defendant to be in violation of the terms of his post release control in this case. Post release control to terminate and defendant to serve remaining period in prison as a sanction, consecutive to sentence in case CR 485862-B."
 {¶ 109} On August 14, 2008, Harris filed a delayed appeal in that case. See State v. Harris, Cuyahoga App. No. 91947. In light thereof, and in light of the fact that Harris' prison sentence for violation of postrelease control was imposed in a separate case, we lack jurisdiction to rule on Harris' eleventh assignment of error because it is on appeal in a separate case.
 {¶ 110} Harris' eleventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and MELODY J. STEWART, J., CONCUR
[1] We note that a recent plurality opinion issued by the Supreme Court of Ohio set forth a two-prong approach for reviewing sentences. See State v. Kalish, Slip Opinion No. 2007-1703, 2008-Ohio-4912. ("In applying Foster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.") As the decision is a plurality and not a majority opinion, we continue to adhere to the traditional clear and convincing/contrary to law standard. *Page 1