JOURNAL ENTRY AND OPINION
{¶ 1} Appellant William Terry appeals his convictions for drug possession and trafficking and the maximum sentence imposed by the trial court. He assigns five errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Terry's convictions and sentence. The apposite facts follow.
 Trial {¶ 3} On February 9, 2007, Parma Heights police officers performed a controlled buy of narcotics. The controlled buy was set up by a confidential informant ("CI") who cooperated with the police in an attempt to receive a favorable sentence in a pending breaking and entering case. The "CI" informed Parma Heights detective, David Kunker, that he knew a drug dealer by the name of William Terry from whom he could purchase drugs. The "CI" had known Terry for four years as he was a friend of the "CI"'s brother.
 {¶ 4} Using Detective Kunker's cell phone, the "CI" made a recorded call to William Terry. The "CI" informed Terry he needed $150 worth of crack cocaine. Terry told him to call him back in fifteen minutes. When the "CI" called Terry back, Terry informed him that he was sending a drug runner to *Page 4 
drop off the drugs in Parma Heights. The drug runner, Mark Arena, then called The "CI" to tell him he was driving a white Monte Carlo and would meet him at the Marathon gas station located on Pearl Road.
 {¶ 5} The "CI" and Parma Heights detectives waited in the unmarked car across from the gas station. The "CI" knew the model type of the car Terry drove because he had previously been a passenger in the car. He alerted the detectives when he saw the car pass their location. The detectives then informed Officer Scott Jackson to stop the car. As soon as the officer activated his lights and siren, Arena dropped the drugs outside the car window. Arena admitted to the police that he was a drug runner for Terry and that Terry paid him with drugs.
 {¶ 6} The jury found Terry guilty of two counts of drug trafficking and one count of drug possession, but acquitted him of the schoolyard specification. The trial court merged the counts for sentencing purposes and sentenced Terry to eighteen months in prison.
 Sufficiency and Manifest Weight {¶ 7} We will address Terry's first and second assigned errors together because they both concern whether the State presented sufficient evidence to support Terry's convictions and whether the "CI" and Arena were credible witnesses. *Page 5 
 {¶ 8} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[2] as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[3]
 {¶ 9} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [4] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *Page 6 
 {¶ 10} Terry contends that the evidence is insufficient because cell phone records linking Terry to the transaction were not presented, and there was no evidence that the Bureau of Motor Vehicles registered the car as being owned by Terry. We conclude that in spite of this "missing" evidence, there was sufficient evidence to support Terry's convictions.
 {¶ 11} The "CI" testified that he called Terry to purchase the drugs. The tape recording of the call was played at trial; the "CI" identified his and Terry's voices on the tape. In addition, the drug runner, Mark Arena, testified that he delivered the drugs on Terry's behalf in exchange for drugs for his personal use. The "CI" also stated that he recognized the Monte Carlo as Terry's car based on the fact he had previously ridden in the car as Terry drove. Arena also stated that the car was Terry's. Therefore, based on the testimony of these two witnesses, there was sufficient evidence to support Terry's convictions for drug possession and trafficking.
 {¶ 12} Thus, the determinative issue is whether the "CI" and Arena are credible, which is an argument that goes to the manifest weight of the evidence. In State v. Wilson, [5] the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows: *Page 7 
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins
(1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652." *Page 8 
 {¶ 13} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[6] Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."[7]
 {¶ 14} Terry argues the "CI" and Arena were felons who were cooperating in order to receive favorable sentences in their pending case; thus, they were not credible. However, the jury was aware the two men were testifying in exchange for favorable sentences and obviously chose to believe them regardless. Also, the fact that both men, who did not know each other, told the police Terry was the drug dealer indicates the jury's choice to believe the men was not a manifest miscarriage of justice. It would be very unlikely that both men, who did not know each other, would wrongly accuse the same man. Accordingly, Terry's first and second assigned errors are overruled.
 Complicity Instruction {¶ 15} In his third assigned error, Terry contends the trial court erred by instructing the jury on complicity. We disagree. *Page 9 
 {¶ 16} In arguing that the trial court erred by instructing the jury on complicity, Terry contends there was no credible evidence that he aided and abetted Arena in selling the drugs. However, as we stated above, Arena stated that Terry gave him the drugs to deliver; he stated he was also to collect the money on Terry's behalf. In exchange, Terry was to give him drugs for his personal use. The "CI" also testified that he called Terry to get the drugs and verified the tape recording of his call to Terry. He also testified that Terry told him he was sending a drug runner to deliver the goods. Based on this evidence, the trial court properly instructed the jury on complicity. Accordingly, Terry's third assigned error is overruled.
 Entrapment {¶ 17} In his fourth assigned error, Terry contends the trial court erred by failing to instruct the jury on entrapment. We disagree.
 {¶ 18} A review of the transcript indicates that Terry never requested an entrapment instruction from the court, nor did he set forth an objection when none was given. His "failure to object to [the] jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise."[8] We conclude the trial court's failure to instruct on entrapment did not constitute plain error. *Page 10 
 {¶ 19} "The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute."[9] An instruction on entrapment would not have been appropriate in this case. At trial, defense counsel argued Terry was innocent because there was no credible evidence linking him to the drug transaction. This is not consistent with the defense of entrapment because entrapment presupposes active participation in the transaction at the instigation of governmental officials.[10] Therefore, the trial court did not err in failing to include an instruction on entrapment. Accordingly, Terry's fourth assigned error is overruled.
 Maximum Sentence {¶ 20} In his fifth assigned error, Terry argues the trial court improperly sentenced him because the court failed to consider the factors set forth in R.C. 2929.11 and 2929.12. We disagree.
 {¶ 21} In State v. Kalish, [11] the Supreme Court of Ohio articulated a two-step approach in reviewing felony sentences. The Court stated: *Page 11 
 "In applying Foster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard."[12]
 {¶ 22} In determining whether the trial court imposed its sentence in accordance with law, we are mindful that the trial court has full discretion to sentence an offender within the allowable statutory range permitted for a particular degree of offense.[13] In the instant case, the trial court sentenced Terry to eighteen months in prison, which was within the statutory range permitted for the offense.
 {¶ 23} Terry does not dispute that the sentence imposed by the trial court fell within the statutory range. He argues in imposing the sentence, the trial court failed to consider the purposes of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12. Although Foster no longer requires the trial court to make findings or give reasons for imposing its sentence, R.C. 2929.11 and 2929.12 remain operative.[14] *Page 12 
However, the court is not required to make findings pursuant to R.C. 2929.11 and 2929.12; it need only consider these provisions.[15]
 {¶ 24} In the instant case, the record demonstrates that the trial court considered R.C. 2929.11 and 2929.12 . The sentencing journal entry reads in part: "The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." Therefore, the trial court properly considered R.C. 2929.11
and 2929.12.[16] Because the court imposed a sentence within the statutory range and considered R.C. 2929.11 and 2929.12 in imposing the sentence, the sentence is not contrary to law.
 {¶ 25} Next, we determine whether the trial court abused its discretion in imposing the sentence. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[17] The record indicates that defense counsel and the prosecutor *Page 13 
addressed the court at the sentencing hearing regarding considerations related to those set forth in R.C. 2929.11 and 2929.12.
 {¶ 26} The court was advised that Terry had entered a twelve-step program to overcome his substance abuse problem; however, the court was also advised of Terry's extensive criminal history. The state also stressed that in the instant case, Terry exploited another person's substance abuse problem in order to complete the drug deal in an attempt to insulate himself from apprehension. Thus, based on these considerations, we conclude the trial court did not abuse its discretion by sentencing Terry to an eighteen-month prison sentence. Accordingly, Terry's fifth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 14 
COLLEEN CONWAY COONEY, A.J., and MARY J. BOYLE, J., CONCUR
 APPENDIX
Assignments of Error "I. The trial court committed error when it denied defendant-appellant's motion for acquittal made pursuant to Criminal Rule 29.
 "II. The appellant's conviction was against the manifest weight of the evidence."
 "III. The trial court erred when it instructed the jury on complicity."
 "IV. The trial court erred when it failed to instruct the jury on the defense of entrapment."
 "V. The trial court erred when it sentenced appellant to the maximum sentence."
[1] See appendix.
[2] (1978), 55 Ohio St.2d 261, syllabus.
[3] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[4] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] 113 Ohio St.3d 382, 2007-Ohio-2202.
[6] State v. Thompkins, supra at 387.
[7] id.
[8] State v. Twyford, 94 Ohio St.3d 340, 350, 2002-Ohio-894.
[9] State v. Doran (1983), 5 Ohio St.3d 187, paragraph one of the syllabus.
[10] Doran, supra.
[11] 120 Ohio St.3d 23, 2008-Ohio-4912.
[12] Id. at ¶ 4. We recognize Kalish is merely persuasive and not necessarily controlling because it has no majority. The Supreme Court is split over whether we review sentences under an abuse-of-discretion standard in some instances.
[13] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at ¶ 100.
[14] State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio 855;Kalish at ¶ 13.
[15] State v. Nolan, Cuyahoga App. No. 90646, 2008-Ohio-5595;State v. Page, Cuyahoga App. No. 90485, 2008-Ohio-4244; State v.McSwain, Cuyahoga App. No. 90358, 2008-Ohio-3661; State v. Garrett, Cuyahoga App. No. 90428, 2008-Ohio-3549.
[16] Cf. State v. Harris, Cuyahoga App. No. 90699, 2008-Ohio-5873
at ¶ 103; State v. Snyder, Cuyahoga App. No. 90869, 2008-Ohio-5586;Nolan, supra (Court complied with R.C. 2929.11 and 2929.12 because journal entry stated court considered all required sentencing factors and testimony was considered at sentencing hearing).
[17] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quotingState v. Adams (1980) 62 Ohio St.2d 151, 157. *Page 1